UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY <br> Plaintiff, <br><br> v. <br><br> JOSEPH CARAMADRE, RAYMOUR RADHAKRISHNAN, ESTATE PLANNING RESOURCES, INC., ESTELLA RODRIGEUS, EDWARD MAGGIACOMO, JR., LIFEMARK SECURITIES CORP. and PATRICK GARVEY, <br> Defendants. | C.A. No. 09-471/ML <br><br> AMENDED COMPLAINT and JURY DEMAND |

## AMENDED COMPLAINT

Plaintiff, Transamerica Life Insurance Company ("Transamerica") for its Amended Complaint against defendants, alleges:

## PARTIES

1. Transamerica Life Insurance Company ("Transamerica") is an Iowa company with its principal place of business in Cedar Rapids, Iowa.

2. Defendant Joseph Caramadre ("Caramadre") is, on information and belief, a Rhode Island citizen and resident.

3. Defendant Raymour Radhakrishnan ("Radhakrishnan") is, on information and belief, a Rhode Island citizen and resident.

4. Defendant Estate Planning Resources, Inc. ("Estate Planning Resources") is, on information and belief, a Rhode Island corporation with its principal place of business in Cranston, Rhode Island.

5. Defendant Estella Rodrigues ("Rodrigues") is, on information and belief, a Rhode Island citizen and resident.

6. Defendant Edward Maggiacomo, Jr. ("Maggiacomo") is a Rhode Island citizen and resident.

7. Defendant Lifemark Securities Corp. ("Lifemark") is a New York company with its principal place of business in New York.

8. Defendant Patrick Garvey ("Garvey"), on information and belief, is a Nevada citizen and resident.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because plaintiff and defendants are of completely diverse citizenship and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

10. All defendants have sufficient minimum contacts with Rhode Island such that this Court has general or specific personal jurisdiction over them.

11. Venue is proper in this Court under 28 U.S.C. § 1391(a) because one or more of the defendants reside in this judicial district and/or a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## BACKGROUND

12. Caramadre is an attorney licensed to practice law in Rhode Island and a self-proclaimed expert in annuities and life insurance products. Caramadre does business through his individual law practice and through his various corporate entities, including Estate Planning Resources.

13. At all relevant times, Caramadre was an agent, officer or employee of Estate Planning Resources and was acting within the scope of his employment or agency relationship.

14. Caramadre has devoted a portion of his law practice and business to identifying perceived "loopholes" in insurance and investment products that, in his opinion, allow individuals to make money or reduce investment risks based, in part, on the shortened life expectancy of terminally ill people. Caramadre and Estate Planning Resources make money by advising clients to purchase insurance or investment products that have, what Caramadre perceives to be, financially beneficial "loopholes."

15. One investment scheme that Caramadre has orchestrated and/or participated in involves the purchase of variable annuities. Rather than recommending the purchase of variable annuities for their intended and appropriate use as long-term retirement investment vehicles, Caramadre and/or his associates induce investors to apply for annuities using terminally ill annuitants with whom they have had no prior relationship.

16. Caramadre's scheme works as follows: Caramadre or his colleagues identify an individual with a terminal illness and, in some cases, offer him or her cash to sign an application for a variable annuity, naming an unknown investor as beneficiary and designating the terminally ill individual as the annuitant. The investor/beneficiary, who frequently has a personal or professional connection with Caramadre, opts for a death benefit feature in the annuity and purportedly pays the annuity premium. At a minimum, the death benefit provides a guaranteed return of premiums paid.

17. Such transactions are referred to as Stranger Initiated Annuity Transactions, or "STAT." Stranger investors may be lured to STAT's for reasons ranging from the opportunity to receive enhanced death benefits to money laundering.

18. Another attraction to STAT's is the opportunity to engage in risk-free, short-term investments based on the short life expectancy of the terminally ill annuitant. When the

annuitant dies – frequently within days or months of the purchase of the annuity – the beneficiary is able to capture market gains while the annuitant was living. At the same time, the investor is insulated from the risk of loss because of the guaranteed return of premium.

19. In order to locate and entice terminally ill individuals to participate in his investment schemes, Caramadre has created and advertised a "Program for the Terminally Ill." Caramadre circulated a flyer advertising the program to Hospice patients and churches. *See Exhibit A to Complaint.* Caramadre also has placed advertisements in various newspapers, offering to pay $2,000 to terminally ill individuals who are willing to participate in various investment schemes that allow him or other individuals (with no relationship to the terminally ill person), to earn a profit based on the short life expectancy of the terminally ill person. *See Exhibit 1 attached hereto.*

20. Transamerica offers a range of financial products for sale to the public. These products are sold nationally by a network of independent Broker/Dealers, including Lifemark. Maggiacomo is an agent or employee of Lifemark, selling insurance and investment products to individuals in Rhode Island.

21. One of the products offered by Transamerica is a flexible premium variable annuity referred to as the "Transamerica Landmark." ("Landmark Annuity"). The Landmark Annuity prospectus, *Exhibit B to Complaint*, explains that variable annuities are long-term financial vehicles designed for retirement purposes. The main features of the Landmark Annuity are tax deferred treatment of earnings, guaranteed death benefit options, guaranteed lifetime payout options and multiple investment options. Because the annuities are "variable," the owner of the annuity is able to participate in the bond and

equity market and realize a return or loss based on market performance. The Landmark Annuity also provides a standard death benefit that pays the annuity beneficiaries the total of all premiums paid, less any adjusted partial withdrawals. For an additional fee, the Landmark Annuity offers a "Double Enhanced" death benefit, an "Annual Step-Up" death benefit and a "Taxpayer Rider," which will provide additional compensation to the beneficiaries upon the death of the annuitant.

22. Caramadre claims to have identified "loopholes" in the terms of Transamerica's Landmark Annuity and application process that would provide him with the opportunity to purchase, or arrange for the purchase of, STAT's from Transamerica.

23. Caramadre typically orchestrates a relatively low initial premium with the annuity application, invested conservatively, so as not to generate questions or suspicions by the issuing insurer. Later, after the contract is issued, Caramadre would orchestrate the payment of a substantially higher premium and transfer funds into higher-yielding, and riskier, investments.

24. Garvey is terminally ill with a heart condition. *See* Declaration of Garvey attached as *Exhibit C to Complaint*.

25. Through his church, Garvey was given a flyer advertising financial assistance to terminally ill people and urging them to contact Estate Planning Resources through Radhakrishnan. In response to the flier, Garvey contacted Radhakrishnan and informed him of his terminal health condition. Because of his terminal illness, Radhakrishnan identified Garvey as a potential annuitant under Caramadre's STAT investment scheme.

26. At all relevant times, Radhakrishnan was an agent or employee of Estate Planning Resources and acting within the scope of his agency or employment relationship.

27. Radhakrishnan convinced Garvey to sign an application for a Landmark Annuity by paying him a total of $5,000. Radhakrishnan did not explain to Garvey that he would be entering into an annuity contract, how the Landmark Annuity worked, or what Garvey's involvement in the annuity would be.

28. Because neither Caramadre, Radhakrishnan nor Estate Planning Resources were authorized to sell Transamerica's annuities, it was arranged that Maggiacomo, as an agent of Lifemark, would sign and submit the application to Transamerica for consideration.

29. In or about March 2008, Transamerica received an application to purchase a Landmark Annuity, signed by Garvey. *See Exhibit D to Complaint.*

30. The application was submitted by or thorough Maggiacomo and/or Lifemark.

31. The application listed Rodrigues as the owner and beneficiary and requested a guaranteed "Double Enhanced Death Benefit," plus a Rider providing an "Additional Death Distribution" to cover tax liability associated with the payment of the death benefit.

32. Garvey had no relationship with Rodrigues at the time the application was signed and submitted.

33. The application was accompanied by a $290,000 initial premium payment.

34. Maggiacomo signed the application as "Registered Representative/Licensed Agent" with the firm of Lifemark. At all times relevant hereto, Maggiacomo was an agent or employee of Lifemark and was acting within the scope of his employment or agency relationship.

35. Garvey did not know, and had never met Maggiacomo as of the time the application was signed or submitted.

36. Garvey had never had any dealings with Lifemark or any of its agents or employees as of the time the application was signed or submitted.

37. In reliance on the representations contained in the application, Transamerica issued Annuity Policy Number 07-100519LK8 ("Annuity"), with a policy date of March 27, 2008, attached as *Exhibit E to Complaint*.

38. In connection with the sale of the Annuity, Transamerica paid a $21,750.00 commission to Maggiacomo and/or Lifemark.

39. Within the months following the issuance of the Annuity, Transamerica learned that Garvey: i.) had no knowledge that he would be a party to an annuity contract or how the Annuity worked; ii.) received money to sign the application; iii.) had never met Rodrigues or Maggiacomo; and iv.) was terminally ill.

40. Transamerica, by letter of September 24, 2009, notified Garvey and Rodrigues that it was exercising its right to rescind the Annuity contract because it had been procured by fraud or misrepresentation and was otherwise void because Rodrigues lacked an insurable interest in Garvey. A true and correct copy of the rescission notice sent to Garvey and Rodrigues is attached as *Exhibit F to Complaint.*

## **COUNT I -RESCISSION**

41. Transamerica restates and realleges all preceding paragraphs as if set forth at length herein.

42. The application misrepresented that Garvey signed the application for the Annuity with knowledge and understanding of the transaction. Such misrepresentation was material to Transamerica's decision to issue the Annuity under the terms it did and it would not have issued the annuity if it knew that Garvey did not knowingly apply for the Annuity.

43. The application failed to disclose that Garvey was terminally ill at the time of the application. Omissions concerning Garvey's known health condition and life expectancy were material to Transamerica's decision to issue the Annuity under the terms it did and it would not have issued the Annuity if it knew of Garvey's known health condition and life expectancy.

44. The application failed to disclose that Garvey had no relationship with the owner and beneficiary of the Annuity, Rodrigues. Omissions concerning the known lack of any relationship between Garvey and Rodrigues were material to Transamerica's decision to issue the Annuity under the terms it did and it would not have issued the Annuity if it knew of the lack of such relationship.

45. Maggiacomo represented on the application that he was the agent who sold the Annuity. This representation was false. Neither Maggiacomo nor anyone else from Lifemark had any substantive involvement in selling the Annuity. The representation by Maggiacomo in the application was material to Transamerica's decision to issue the Annuity under the terms it did and it would not have issued the Annuity if it knew that Maggiacomo's representation was false.

46. The application did not disclose that Garvey was paid to sign the application, in violation of R.I. Gen. Laws § 27-4-6. The concealment of this payment to Garvey was material to Transamerica's decision to issue the annuity under the terms it did and it would not have issued the annuity if it knew of the payment to Garvey.

47. The material misrepresentations and omissions described herein actually contributed to the contingency or event upon which the death benefits under the Annuity are to become due and payable.

48. Because Rodrigues is the beneficiary of the Annuity, which contains a death benefit, Rodrigues is required to have an insurable interest in Garvey.

49. Rodrigues lacked any insurable interest in Garvey and, therefore, the Annuity was void *ab initio* or is voidable at the will of Transamerica.

50. As a result of the material misrepresentations and omissions in the application for the Annuity, as well as Rodrigues' lack of an insurable interest in Garvey, Transamerica is entitled to rescind the Annuity.

## COUNT II - DECLARATORY JUDGMENT

51. Transamerica restates and realleges all preceding paragraphs as if set forth at length herein.

52. An actual controversy concerning the validity of the Annuity currently exists.

53. As a result of the material misrepresentations described herein, and Rodrigues' lack of an insurable interest in Garvey, the Annuity was void *ab initio* or has properly been voided and rescinded by Transamerica.

## COUNT III – FRAUD
*(CARAMADRE, RADHAKRISHNAN, ESTATE PLANNING RESOURCES, MAGGIACOMO and LIFEMARK)*

54. Transamerica restates and realleges all preceding paragraphs as if set forth at length herein.

55. Caramadre, Radhakrishnan, Estate Planning Resources, Maggiacomo and Lifemark acted in concert to submit the application containing intentionally omitted and misleading information concerning Garvey's knowledge of the application, his health condition, his life expectancy, the payment to Garvey, and the absence of a relationship between Garvey and Rodrigues, Maggiacomo and Lifemark.

56. At the time the application was submitted, Caramadre, Radhakrishnan, Estate Planning Resources, Maggiacomo and Lifemark knew the representations and omissions were false or misleading.

57. Caramadre, Radhakrishnan, Estate Planning Resources, Maggiacomo and Lifemark submitted, or arranged for the submission of, the false or misleading application with the intention that Transamerica would rely on the information, or lack thereof, contained in the application.

58. Transamerica relied and acted on the false or misleading representations and omissions and issued the Annuity when it otherwise would not have if there had been full disclosure to Transamerica.

59. Transamerica has been harmed by the fraudulent acts of Caramadre, Radhakrishnan, Estate Planning Resources, Maggiacomo and Lifemark by, among other things, issuing the Annuity, paying commissions on the fraudulently obtained Annuity and incurring market losses caused by the fraudulently obtained Annuity.

## COUNT IV - BREACH OF CONTRACT
*(LIFEMARK)*

60. Transamerica restates and realleges all preceding paragraphs as if set forth at length herein.

61. First Providian Life and Health Insurance Company ("First Providian") entered a General Agent Agreement with Lifemark in October 1997 ("1997 Agreement"). First Providian was merged into Transamerica in 1998 and, thus, the 1997 Agreement governs the relationship, rights, and responsibilities of Transamerica and Lifemark and authorized Lifemark to sell insurance and annuity products for Transamerica.

62. Pursuant to Part 2 of the 1997 Agreement, Lifemark was obligated to "(a) use and supervise" its agents selling Transamerica's products. Lifemark has breached the 1997 Agreement by failing to train, use or supervise Maggiacomo consistently with the obligations set forth in Parts 2(a) of the 1997 Agreement.

63. Pursuant to Part 2 of the 1997 Agreement, Lifemark was obligated to, among other things, "(f) make a determination with respect to each purchaser of a PLAN that such purchaser's investment in the PLAN is suitable as to such purchaser based upon a thorough review of the current financial situation and needs of the purchaser. . . and notify [Transamerica] promptly upon its learning any circumstances that render such suitability information inaccurate; and (g) adopt, abide by and enforce the principles set forth in the Ethics Code. . . ." The Ethics Code provides, among other things, that the sale of insurance products should be conducted "according to the high standards of honesty and fairness. . . ." The Ethics Code further provides that Transamerica's products should be sold only after reasonable efforts have been made "to determine the insurable needs or financial objectives of its customers. . . ."; that Lifemark's agents will "maintain compliance with applicable laws and regulations"; and that Lifemark will "maintain a system of supervision that is reasonably designed to achieve compliance with this Ethics Code." Lifemark has breached the 1997 Agreement by failing to honor the obligations of Part 2 of the 1997 Agreement and the Ethics Code.

64. Pursuant to Part 3 of the 1997 Agreement, Lifemark was prohibited from, among other things, "(e) us[ing] or supply[ing] to a third party for use, any of [Transamerica's] forms other than for purposes of this Agreement. . .; (g) pay[ing] or allow[ing] to be paid any inducement not specified in the contract for the PLANS; (h) cause any premium or

consideration to be rebated, in any manner whatsoever, directly or indirectly. . .; (l) enter into any contracts with sub-agents for the solicitation of PLANS or to share commissions with anyone not licensed and under contract with [Transamerica]; (m) engage in speculation of human life in any way. . . ." Lifemark breached the 1997 Agreement by engaging in acts prohibited in Part 3 of the 1997 Agreement by, among other things, arranging for, or permitting, Radhakrishnan to solicit and sell the Annuity and providing him with application forms to accomplish such activities; permitting Garvey to be paid to sign the application; and arranging for the issuance of the Annuity in the absence of an insurable interest in Garvey.

65. Pursuant to Part 4 of the 1997 Agreement, Lifemark represented and warranted that its employees and agents "will have sound business reputations and backgrounds . . . ; and will comply with all other applicable laws federal and state and regulations." Lifemark breached the 1997 Agreement by failing to honor the representations and warranties set forth in Part 4 of the 1997 Agreement concerning its employees and agents.

66. Pursuant to Part 7 of the 1997 Agreement, Lifemark is obligated to "indemnify and hold harmless" Transamerica "with respect to any and all losses, damages, claims or expenses (including reasonable attorneys' fees) which any of the foregoing may incur arising from or in connection with INDEMNIFIER'S performance, non-performance and/or breach of any warranty, representation or other provision of this Agreement or any unlawful acts or practices by INDEMNIFIER involving the PLANS." Transamerica has incurred financial losses, claims, damages, claims, attorney's fees and liabilities within the contemplation of Part 7 of the 1997 Agreement that arise out of, or are based upon the

acts or omissions of individuals for whom Lifemark is responsible and Lifemark has failed to indemnify Transamerica as required by Part 7 of the 1997 Agreement.

67. Had Lifemark complied with its contractual obligations, Western Reserve would not have issued the Annuity, would not have paid commissions thereon and would not have incurred market loss.

68. Transamerica has incurred financial loss, claims, damages or liabilities as a result of Lifemark's breaches of the 1997 Agreement.

## COUNT V - DECLARATORY JUDGMENT
*(LEADERS GROUP)*

69. Transamerica restates and realleges all preceding paragraphs as if set forth at length herein.

70. Transamerica is entitled to be indemnified by Lifemark for all financial losses, obligations, claims, damages and liabilities that it might incur in the future that arise out of, or are based upon the acts or omissions of individuals for whom Lifemark is responsible, within the contemplation of Part 7 of the 1997 Agreement.

## COUNT VI - BREACH OF DUTY OF GOOD FAITH AND FAIR DEALINGS
*(LIFEMARK)*

71. Transamerica restates and realleges all preceding paragraphs as if set forth at length herein.

72. The 1997 Agreement incorporates an implied duty of good faith and fair dealings.

73. Lifemark, by the acts of its agent, Maggiacomo, breached its duty of good faith and fair dealing owed to Transamerica by engaging in conduct designed or intended to obtain the Annuity without the *informed* consent of Garvey, without disclosing his known health condition and life expectancy, without disclosing Rodrigues' lack of an insurable interest

in Garvey, without disclosing that Radhakrishnan actually brokered the purchase of the annuity and without disclosing that Garvey was paid to sign the application.

74. Transamerica has been financially harmed as a result of Lifemark's breach.

### COUNT VII - CIVIL LIABILITY FOR CRIMES AND OFFENSES
*(CARAMADRE, RADHAKRISHNAN, ESTATE PLANNING RESOURCES, MAGGIACOMO and LIFEMARK)*

75. Transamerica restates and realleges all preceding paragraphs as if set forth at length herein.

76. Caramadre, Radhakrishnan, Estate Planning Resources, Maggiacomo and Lifemark prepared, assisted, abetted or solicited the preparation and submission of the application for the Annuity to Transamerica. In doing so, Caramadre, Radhakrishnan, Estate Planning Resources, Maggiacomo and Lifemark acted with the intent to deceive and with knowledge that information or omissions on the application were false or misleading and were material to Transamerica.

77. The Annuity is an insurance policy within the contemplation of R.I. Gen. Laws § 11-41-29.

78. Transamerica is an "insurer" within the meaning of § 11-41-29(a)(1).

79. The conduct of Caramadre, Radhakrishnan, Estate Planning Resources, Maggiacomo and Lifemark constitutes criminal insurance fraud in violation of § 11-41-29.

80. Transamerica has suffered injury as a result of such crime and may recover its damages for such injury pursuant to R.I. Gen. Laws § 9-1-2.

### COUNT VIII - CIVIL CONSPIRACY
*(CARAMADRE, RADHAKRISHNAN, ESTATE PLANNING RESOURCES, MAGGIACOMO and LIFEMARK)*

81. Transamerica restates and realleges all preceding paragraphs as if set forth at length herein.

82. Caramadre, Radhakrishnan, Estate Planning Resources, Maggiacomo and Lifemark reached an agreement to work in concert to obtain the Annuity unlawfully and by improper means. In doing so, Caramadre, Radhakrishnan, Estate Planning Resources, Maggiacomo and Lifemark intended to act illegally or tortiously and have harmed Transamerica.

### COUNT IX - UNJUST ENRICHMENT
*(LIFEMARK and MAGGIACOMO)*

83. Transamerica restates and realleges all preceding paragraphs as if set forth at length herein.

84. Transamerica paid commissions to Lifemark and/or Maggiacomo as a result of the sale of the Annuity and, as such, Lifemark or Maggiacomo have appreciated a benefit conferred by Transamerica.

85. It would be inequitable for Lifemark or Maggiacomo to retain the commission previously paid because it was procured by their tortious or criminal acts as described herein.

### COUNT X – NEGLIGENCE
*(LIFEMARK and MAGGIACOMO)*

86. Transamerica restates and realleges all preceding paragraphs as if set forth at length herein.

87. Maggiacomo owed a duty to Transamerica to learn and obtain information material to Transamerica's review of the application for the Annuity, including the facts that Garvey was terminally ill and had a limited life expectancy, that Rodrigues had no relationship with Garvey and lacked an insurable interest in him, that Garvey did not knowingly apply

for the Annuity and that he was paid to sign the application. Maggiacomo breached his duty of care owed to Transamerica by failing to obtain and report such information to Transamerica in connection with the application for the Annuity, thereby causing Transamerica to issue the Annuity.

88. Lifemark owed a duty to Transamerica to adequately supervise and train its employees to ensure that insurance and investment products such as the Annuity would not be issued to terminally ill individuals paid to sign annuity applications, issued with named beneficiaries who have no insurable interest in the annuitant and issued without the knowledge or informed consent of the annuitant. Lifemark's failure to adequately supervise and train Maggiacomo caused Transamerica to issue the Annuity.

89. Transamerica has been financially harmed by the negligence of Maggiacomo and Lifemark.

**WHEREFORE**, Transamerica respectfully requests that the Court grant the following relief:

a) Rescission of the Annuity and a judicial declaration of such rescission;

b) Alternatively, a declaration that the Annuity was void *ab initio*;

c) Restitution of all sums Transamerica has paid out on the Annuity, including sales commissions;

d) A judgment against Caramadre, Radhakrishnan, Estate Planning Resources, Maggiacomo and Lifemark jointly and severally, awarding Transamerica damages for, among other things, commissions paid in connection with the Annuity, market losses suffered as a result of the issuance of the Annuity and costs, attorney's fees and expenses incurred investigating and pursuing this lawsuit, with prejudgment interest thereon;

e) A declaration that Lifemark must indemnify Transamerica for all losses, claims, damages, liabilities and attorney's fees that Transamerica might incur in the future in connection with the Annuity; and

f) Any other relief as the Court deems just and equitable.

JURY DEMAND: Transamerica hereby requests trial by jury on all issues so triable.

Respectfully submitted

_/s/ Michael J. Daly_ _____
Brooks R. Magratten, Esq., No. 3585
Michael J. Daly, Esq. No. 6729
PIERCE ATWOOD LLP
 Attorneys for Plaintiff
10 Weybosset St., Suite 400
Providence, RI 02903
(401)588-5113 [Tel.]
(401)588-5166 [Fax]
mdaly@pierceatwood.com
bmagratten@pierceatwood.com

Dated: October 16, 2009

## CERTIFICATE OF SERVICE

        I hereby certify that the within Amended Complaint was electronically filed with the clerk of the court on October 16, 2009 and that such document is available for viewing and downloading from the Court's ECF system. Service on all defendants has been effectuated by mailing the Amended Complaint to the following parties by US Mail, first class postage prepaid:

Robert G. Flanders, Esq.
Hinckley, Allen & Snyder
50 Kennedy Plaza, Suite 1500
Providence, RI 02903

Jeffrey B. Pine, Esq.
Jeffrey B. Pine, P.C.
321 South Main Street
Providence, RI 02903

Ms. Estella Rodrigeus
330 Sowams Rd.
Barrington, RI 02806

Anthony M. Traini, Esq.
Anthony M. Traini, P.C.
56 Pine Street, Suite 200
Providence, RI 02903

Lifemark Securities Corp.
400 West Metro Financial Center
Rochester, NY 14623

Mr. Patrick Garvey
3555 East Lake Mead Boulevard
Apt. 298
Las Vegas, NV 89115-7357

                                                /s/ Michael J. Daly