# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY,<br>Plaintiff<br><br>vs.<br><br>JOSEPH CARAMADRE, RAYMOUR RADHAKRISHNAN, ESTATE PLANNING RESOURCES, INC., ESTELLA RODRIGUES, EDWARD MAGGIACOMO, JR., LIFEMARK SECURITIES CORP., and PATRICK GARVEY,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No.: 09-471-WS |

## DEFENDANTS JOSEPH CARAMADRE, RAYMOUR RADHAKRISHNAN, ESTATE PLANNING RESOURCES, INC., AND ESTELLA RODRIGUES'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Joseph A. Caramadre ("Mr. Caramadre"), Raymour Radhakrishnan ("Mr. Radhakrishnan"), Estate Planning Resources, Inc. ("EPR"), and Estella Rodrigues ("Ms. Rodrigues"), by and through their attorneys, Hinckley, Allen & Snyder LLP, hereby move to dismiss all counts that Plaintiff Transamerica Life Insurance Company ("Plaintiff" or "Transamerica") brings against them in its Amended Complaint. The Court should dismiss the Complaint as to these defendants for several reasons:

(1)     The annuity contract at issue contains an incontestability clause that bars Counts I and IV-VI.

(2)     The alleged nondisclosures are not actionable as fraud because the Defendants had no legal duty to disclose the information in question to Plaintiff. Moreover, WRL fails to

allege fraud with the specificity that Fed. R. Civ. P 9(b) requires and WRL fails to allege, even at a general level, any actual fraud.

In further support of this motion, Defendants file herewith a memorandum of law with accompanying exhibits.

Respectfully submitted,

JOSEPH A. CARAMADRE, ESTELLA
RODRIGUES, ESTATE PLANNING
RESOURCES, INC., AND RAYMOUR
RADHAKRISHNAN
By their Attorney,


/s/ Robert G. Flanders, Jr.
Robert G. Flanders, Jr. (#1785)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel. (401) 274-2000/Fax. (401) 277-9600
rflanders@haslaw.com

Dated: November 13, 2009


## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2009, a copy of the within document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


/s/ Robert G. Flanders, Jr.

#829012v1

|  |  |  |
|---|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>    Plaintiff<br><br>vs.<br><br>JOSEPH CARAMADRE, RAYMOUR RADHAKRISHNAN, ESTATE PLANNING RESOURCES, INC., ESTELLA RODRIGUES, EDWARD MAGGIACOMO, JR., LIFEMARK SECURITIES CORP., and PATRICK GARVEY,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No.: 09-471-WS |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JOSEPH CARAMADRE, RAYMOUR RADHAKRISHNAN, ESTATE PLANNING RESOURCES, INC., AND ESTELLA RODRIGUES'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Joseph A. Caramadre ("Mr. Caramadre"), Raymour Radhakrishnan ("Mr. Radhakrishnan"), Estate Planning Resources, Inc. ("EPR"), and Estella Rodrigues ("Ms. Rodrigues"), by and through their attorneys, submit this memorandum of law in support of their motion to dismiss all counts that Plaintiff Transamerica Life Insurance Company ("Plaintiff" or "Transamerica") brings against them in its Amended Complaint. The Court should dismiss the Complaint as to these defendants for several reasons:

    (1)    The annuity contract at issue contains an incontestability clause that bars Counts I-III and VII-IX.

    (2)    The alleged nondisclosures are not actionable as fraud because the defendants had no legal duty to disclose the information in question to Plaintiff. Moreover, Transamerica fails

to allege fraud with the specificity that Fed. R. Civ. P 9(b) requires and Transamerica fails to allege, even at a general level, any actual fraud.

## BACKGROUND

On October 2, 2009, Transamerica filed a Complaint asserting multiple claims related to a variable annuity contract that it issued to the investor, Ms. Rodrigues. See Exhibit A (composite exhibit of exhibits attached to original complaint; the original complaint is omitted).

On October 16, 2009, Transamerica filed an Amended Complaint containing the same general allegations and cross-referencing the exhibits to the original complaint. See Exhibit B (Amended Complaint).

Transamerica is an Iowa company that offers a range of financial products for sale to a national market, including Rhode Island. Exhibit B ¶¶ 1, 20.

One product that Transamerica offers for sale to the public as part of its national business is a variable annuity, which Transamerica refers to as the "Transamerica Landmark" annuity (hereinafter "Transamerica annuity"). The Transamerica annuity includes "a standard death benefit that pays the annuity beneficiaries the total of all premiums paid, less any adjusted partial withdrawals." Id. ¶ 21. Transamerica also offers, "[f]or an additional fee," "a 'Double Enhanced' death benefit, an 'Annual Step-Up death benefit and a 'Taxpayer Rider,' which will provide additional compensation to the beneficiaries upon the death of the annuitant." Id.

Transamerica alleges that Mr. Radhakrishnan compensated Defendant Charles Garvey ("Mr. Garvey"), who was supposedly terminally ill with a heart condition at the time, in the

2

amount of $5,000 in exchange for Mr. Garvey's signing as an annuitant of Estella Rodrigues's application for a Transamerica annuity.[1] Id. ¶¶ 24, 27.

In March of 2008, Ms. Rodrigues signed and submitted an application to Transamerica to purchase a Transamerica annuity, an application that Mr. Garvey also signed as the annuitant. The application listed Ms. Rodrigues as the proposed owner and beneficiary; and it requested Transamerica to include a guaranteed "Double Enhanced Death Benefit" in the Transamerica annuity that Ms. Rodrigues sought to purchase, together with a Rider providing an additional distribution to cover her tax liability. Id. ¶¶ 29, 30; see Exhibit A at *Exhibit D* (Application for Transamerica annuity, hereinafter "Application").

Although nothing in its application or in the Transamerica annuity itself called for the disclosure of such information, Transamerica then alleges that Transamerica's "application failed to disclose" that Mr. Garvey was terminally ill at the time of the Application; that he had no preexisting relationship with the investor in the annuity, Ms. Rodrigues; and that Mr. Garvey was paid to sign the application as the annuitant. Exhibit B ¶¶ 43, 44, 46. Transamerica also alleges that the Application "misrepresented" that Mr. Garvey signed the Application "with understanding and knowledge of the transaction," id. ¶ 42, even though the application contained no such representation and nowhere asked the moving Defendants to verify his level of knowledge.

In fact, Transamerica's annuity Application contained no questions regarding the annuitant's health status, knowledge about the annuity, or life expectancy -- and none of the

---

[1] Transamerica alleges that at all relevant times Mr. Radhakrishnan was an agent or employee of EPR and acting within the scope of his agency or employment relationship, Exhibit B ¶ 26, and that Mr. Caramadre was an agent, officer, or employee of EPR and acting within the scope of his employment or agency relationship, id. ¶ 13.

Defendants made any statements of any kind on that topic in the Application. <u>See</u> <u>Exhibit A</u> at *Exhibit D*. Moreover, neither Ms. Rodrigues, nor any of the other Defendants, nor the annuitant himself owed any legal duty to Transamerica to disclose the annuitant's health to Transamerica. <u>See</u> <u>infra</u>, parts II(A)(1) & (4).

Transamerica's Application contained no questions regarding the relationship, if any, between the annuitant and the investor, and none of the Defendants made any statements of any kind on that topic in the Application. <u>See</u> <u>Exhibit A</u> at *Exhibit D*. Moreover, the Defendants owed no legal duty to Transamerica to do so. <u>See</u> <u>infra</u>, parts II(A)(1) & (4).

Neither Transamerica's annuity nor its Application contained any provision prohibiting the compensation of an annuitant in exchange for the annuitant agreeing to serve in that capacity; the Application failed to ask any questions on that subject; and none of the Defendants made any statements on that topic in the Application. <u>See</u> <u>Exhibit A</u> at *Exhibit D*. Moreover, they owed no legal duty to Transamerica to do so. <u>See</u> <u>infra</u>, parts II(A)(1) & (4).

Neither Transamerica's Application nor Transamerica's annuity included any requirement that the investor have an "insurable interest" or any other relationship with the annuitant. <u>See</u> <u>Exhibit A</u> at *Exhibits D* and *E* (hereinafter the "Transamerica annuity"). And, legally, no such interest was required. <u>See</u> <u>infra</u>, part IV.

Most significantly, the Transamerica annuity contained an "incontestability clause" stating that "This policy shall be incontestable from the Policy Date." <u>Exhibit A</u> at *Exhibit E* § 11 (p. 22). The Policy Date was March 27, 2008, <u>id.</u> at p. 1, yet Transamerica began this action on October 2, 2009.

In applying for the Transamerica annuity, Ms. Rodrigues, the annuity's investor, submitted to Transamerica an initial purchase payment of $290,000. <u>Exhibit B</u> ¶ 33.

4

On the basis of these allegations, Transamerica brings multiple counts against the Defendants, including a count against Ms. Rodrigues for rescission of the Transamerica annuity (Count I), a declaratory judgment that the Transamerica annuity is void *ab initio* (Count II), fraud (Count III), civil liability for crimes and offenses (Count VII), and civil conspiracy (Count VIII).[2] Id. ¶¶ 41-59, 75-82. Because, for the reasons set forth below, these claims against the moving Defendants are meritless and fail to state a claim on which relief may be granted, the Court should dismiss them.

## STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts as true the factual allegations of the complaint and construes all reasonable inferences therefrom in favor of the plaintiff. Marrero v. Aragunde, No. 08-1517, 2009 U.S. App. LEXIS 19299, at *5 (1st Cir. Aug. 27, 2009). To survive a motion to dismiss, however, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)), and the Court is "free to disregard 'bald assertions, unsupportable conclusions, and opprobrious epithets.'" In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008) (quoting Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 4 (1st Cir. 2007)). In a case such as this, in which the Plaintiff brings fraud-based claims, Rule 9(b) requires additionally that the plaintiff plead those claims with particularity. (See Part II(B), below).

---

[2] Transamerica does not bring Counts III, VII, or VIII against Ms. Rodrigues.

#827114v4

## THE REASONS WHY THE COURT SHOULD DISMISS THESE CLAIMS

The Court should dismiss the Complaint for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The Transamerica annuity itself bars Counts I-III and VII-VII because it contains an incontestability clause terminating Transamerica's right to bring such claims as of March 27, 2008, the date Transamerica issued the contract. Moreover, these claims all depend on the viability of Transamerica's fraud claim, and the fraud claim fails for two additional reasons. First, Transamerica fails to allege any facts that are legally cognizable as fraud under the common law. Second, Transamerica fails to plead fraud with specificity as required by Fed. R. Civ. P. 9(b). Finally, applicable law does not require that Ms. Rodrigues, as the investor in the Annuity, have any "insurable interest" in the annuitant or have selected an annuitant whose health status was at any time disclosed to, much less approved by, Transamerica. Therefore, Transamerica may not rescind the annuity on such untenable grounds.

## I. THE COURT SHOULD DISMISS COUNTS I-III AND VII-IX BECAUSE THE TRANSAMERICA ANNUITY'S INCONTESTABILITY CLAUSE BARS THESE CLAIMS.

Counts I-III and VII-VIII all amount to a challenge to the validity of the Transamerica annuity. But the Court should dismiss these claims because, in issuing the annuity, Transamerica's adhesion contract includes an incontestability clause that bars its claims.

Incontestability clauses are common in the insurance industry, and insurers frequently include them in life insurance policies. They are also common in annuity contracts. See SEC v. United Ben. Life Ins. Co., 387 U.S. 202, 206 & n.5 (1967) (listing the annuity contract's "[s]tandard incontestability clauses" as being among the "features" "common to annuity contracts" present in the contract at issue). An incontestability clause is defined as a clause "providing that after the policy has been in force for a given length of time . . . the insurer shall

#827114v4

not be able to contest it as to statements contained in the application." Black's Law Dictionary (6th ed. 1990). "The incontestability clause is essentially designed to prevent an insurer from denying the validity of its policy after a specified time based on supposedly false statements or misrepresentations made by an insured in procuring his insurance." 29 Appleman on Insurance § 178.03 (2d ed. 2006). The clauses are uniformly enforced, even when, as here, the insurer belatedly attempts to assert fraud-in-the inducement claims after the contract has become incontestable. Thus, they permit an insurer "to make no defense to any action at law which might be brought to enforce liability on the policies." Prudential Insurance Co. v. Tanenbaum, 167 A. 147, 150 (R.I. 1933); Mohr v. Prudential Ins. Co., 78 A. 554 (R.I. 1910). Of signal importance to this case, such clauses are also enforceable notwithstanding the insurer's claims of deliberate fraud by the person applying for and obtaining the policy. Murray v. State Mutual Life Ins. Co., 48 A. 800 (R.I. 1901); Paul Revere Life Ins. Co. v. Fima, 1997 U.S. App. LEXIS 6299, *4 (9th Cir. Apr. 3, 1997); John Hancock Mut. Life Ins. Co. v. Greer, 71 Cal. Rptr. 2d 48 (Cal. App. 1998); McLeod v. Life of the South Ins. Co., 703 So.2d 362, 366 (Ala. Civ. App. 1996) ("The 'principal function [of an incontestability clause] is to cut off defenses such as . . . misrepresentation that go to the existence of the policy after the policy has been in force and effect for a period of time.'"); Lee R. Russ & Thomas F. Segalia, Couch on Insurance § 240:15 (3d ed. 2000); Richard A. Lord, Willison on Contracts § 49.97 (4th ed. 2009) ("[F]raud is one of the defenses [to enforceability of the policy] most frequently alleged by the insurer, but generally to no avail, unless 'fraudulent misrepresentation' is expressly excepted from the scope of the incontestability clause . . . ."). Here, no such exception exists in the Transamerica annuity.

#827114v4

Although the common law interpreting and enforcing such rules has developed, for the most part, in the insurance context, the same rule should apply to a non-insurance contract such as this one containing such a clause, particularly when, as here, an insurance company has issued the adhesion contract in question. Indeed, some jurisdictions explicitly and statutorily recognize and regulate incontestability clauses in annuity contracts. E.g., Equitable Life Assur. Soc'y of the United States v. Madis, 240 A.D.2d 100, 102-03 (N.Y. App. Div. 1998) (citing N.Y. CLS Ins. § 3210 (2009) ("Any policy of life or non-cancellation disability insurance or contract or annuity delivered or issued in this state that is reinstated shall be incontestable after the same period following reinstatement and with the conditions and exceptions in the policy or contract with respect to incontestability.")). The rules for interpretation of insurance contracts, moreover, are at bottom the same rules established for construction of contracts generally. Zarella v. Minnesota Mutual Life Ins. Co., 824 A.2d 1249, 1259 (R.I. 2003) (quoting Malo v. Aetna Casualty & Surety Co., 459 A.2d 954, 956 (R.I. 1983)). One of those rules is the rule of *contra proferentem*, which instructs that, particularly when contracts of adhesion are interpreted, contractual ambiguities are to be construed against the drafter of the agreement – in this case, Transamerica. Elliott Leases Cars, Inc. v. Quigley, 373 A.2d 810, 813-14 (R.I. 1977); see also Zifcak v. Monroe, 249 A.2d 893 (R.I. 1969). Here, the incontestability clause that Transamerica drafted and included as part of its adhesion annuity indicates that "This policy shall be incontestable from the Policy Date." See Exhibit A at *Exhibit E* § 11 (p. 22). Because Transamerica brought this action after the Policy Date of March 27, 2008, the incontestability clause bars its claims challenging the Transamerica annuity's validity, including its fraud-based allegations.

#827114v4

## II.	THE COURT SHOULD DISMISS COUNTS I-III and VII-IX BECAUSE TRANSAMERICA FAILS TO ALLEGE FRAUD.

In addition to the incontestability clause barring this insurer's claims, they are also deficient as a matter of law for other reasons. Counts I-III and VII-IX all depend on Transamerica's contention that Defendants committed fraud by inducing Transamerica to enter into the Transamerica annuity that it now seeks to invalidate. Transamerica seeks to rescind the Transamerica annuity, obtain a declaratory judgment to invalidate it, and recover damages for fraud, while also bringing derivative claims for civil conspiracy, and civil liability for insurance fraud against these Defendants – all based primarily[3] on its allegations of material *omissions* from the Application. See Exhibit B ¶¶ 43, 44, 46. Transamerica fails, however, to allege any actual fraud or any other wrongdoing by any of the Defendants, either under the common law fraud standard or with the particularity required by Fed. R. Civ. P. 9(b).

### A.	TRANSAMERICA'S ALLEGATIONS OF SUPPOSED "MATERIAL OMISSIONS" ARE INSUFFICIENT AS A MATTER OF LAW TO CONSTITUTE FRAUD.

The Court should dismiss Counts I-III and VII-IX because Transamerica fails to allege actionable fraud under the common law. The Amended Complaint does not allege that the fraud-based counts are predicated on affirmative misstatements by any of these Defendants. Rather, the Amended Complaint contends that the Application for the variable annuity in question failed to disclose information about the health and life expectancy of the annuitant, the alleged compensation paid to the annuitant, Mr. Garvey's level of knowledge regarding the annuity's terms and conditions, and the lack of any pre-existing relationship between the investor and the annuitant. The Amended Complaint then alleges that these omissions, standing alone, constitute

---

[3] See infra, n. 10.

fraud.[4] As a matter of law, however, these allegations are insufficient to constitute fraud because Defendants owed no duty to Transamerica to disclose to or communicate with Transamerica about such matters, and Transamerica does not allege that any of the Defendants did so. In addition, Transamerica fails to allege that it relied, let alone justifiably, on the omissions, or that the omissions were material.

### 1. Transamerica fails to allege common law fraud because the Defendants had no duty to disclose the information.

The elements of common law fraud are well known. "To establish a *prima facie* case of common law fraud in Rhode Island 'the plaintiff must prove that the defendant knowingly "made a *false representation* intending thereby to induce plaintiff to rely thereon," and that the plaintiff *justifiably relied* thereon to his or her damage.'" Zaino v. Zaino, 818 A.2d 630, 638 (R.I. 2003) (quoting Women's Development Corp. v. City of Central Falls, 764 A.2d 151, 160 (R.I. 2001) (quoting Travers v. Spidell, 682 A.2d 471, 472-73 (R.I. 1996))) (emphasis added); see also Nisenzon v. Sadowski, 1994 R.I. Super. LEXIS 46 (March 4, 1994) ("Common law fraud has four elements: 1) a false or misleading statement of a material fact that was 2) known by the defendant to be false and 3) made with intent to deceive, 4) upon which the plaintiff relies to its detriment."). Accord, Grady v. Goldberg, 2008 WL 821610, *5 (D.R.I. March 27, 2008) (citing Guzman v. Jan-Pro Cleaning Sys., Inc., 839 A.2d 504, 507 (R.I. 2003)).

Fraud "can be grounded in concealment" only under limited circumstances in Rhode Island. National Credit Union Admin. Bd. v. Regine, 795 F. Supp. 59, 70 (D.R.I. 1992). Rhode

---

[4] In passing, Transamerica also alleges that compensating the annuitant violated R.I. Gen. Laws § 27-4-6, Exhibit B ¶46, but the statute does not apply to the alleged facts. Its provisions barring certain types of payments to insureds pertain to insurance "corporation[s]" and "producer[s]," that make such payments to insureds under insurance policies, but they have no application to owners of annuity contracts or others who compensate annuitants.

#827114v4

Island law recognizes fraud claims based on failures to disclose only when the defendant has a pre-existing "duty to speak," a duty which is not alleged to be present here. See Pharmacy Services, Inc. v. Swarovski North America, Ltd., 2006 WL 753055, *3 (D.R.I. March 21, 2006). Specifically, Rhode Island courts have recognized the viability of a fraudulent concealment claim in cases when the defendant is alleged to have made an *affirmative statement* that was misleading in light of the omitted information, and the defendant had a *duty to disclose* the withheld information arising from the special circumstances of the relationship between the parties. See, e.g., In re: Martino, 108 B.R. 394, 400 (D.R.I. 1989); Cardiovascular & Thoracic Assoc., Inc. v. Fingleton, 1995 R.I. Super. LEXIS 26 (R.I. Super. Aug. 23, 1995); see also In re Neurontin Marketing, Sales Practices and Products Liability Litigation, 618 F. Supp.2d 96, 108-09 (D. Mass. 2009) (there can be no fraud for failure to disclose in absence of duty to disclose); Guibeault v. R.J. Reynolds Tobacco Co., 84 F. Supp. 2d 263, 269 (D.R.I. 2000) (Under Rhode Island law, a fraud "claim based on concealment will not lie absent a duty to speak."); Sahin v. Sahin, 758 N.E.2d 132, 138, n. 9 (Mass. 2001) (fraud by omission requires "both concealment of material information and a duty requiring disclosure").[5] Moreover, the applicable rule for contracts of adhesion that insurance companies issue is that there is no duty on the consumer/purchaser of such contracts to disclose any particular information to the insurer if the insurance company did not inquire about that information on the application it prepared for the consumer/purchaser to submit. See, e.g., Testa v. Norfolk & Dedham Mut. Fire Ins. Co., 764 A.2d 119, 121 (R.I. 2001).

---

[5] In significant respects the Rhode Island and Massachusetts case law parallels the federal securities law provisions regarding fraud in the sale of securities. Pursuant to the Securities and Exchange Commission's Rule 10b-5 (17 CFR § 240.10b-5), a material omission is not unlawful unless the omission caused "the statements made" to be "misleading" or there was an independent duty to disclose the information. See Roeder v. Alpha Industries, Inc., 814 F.2d 22, 28 (1st Cir. 1987) ("Even if information is material, there is no liability under Rule 10b-5 unless there was a duty to disclose it."); Polak v. Continental Hosts, Ltd., 613 F. Supp. 153, 156 (S.D.N.Y. 1985 ("Absent a specific duty to disclose, even the most material information imaginable may be withheld from the public.").

#827114v4

In the case of <u>Nisenzon v. Sadowski</u>, the Rhode Island Supreme Court found an attorney committed fraud by sending a letter to a lender assuring the lender that the attorney's client intended to repay a loan. <u>Nisenzon v. Sadowski</u>, 689 A.2d 1037, 1046 (R.I. 1997). Significantly, the attorney sent his letter in response to the creditor's previous letter expressing interest in obtaining security in the amount owed. But in responding to the creditor's inquiry, the attorney failed to mention that he, the attorney, already had conveyed the property that the lender presumed would serve as security on the loan from his client to himself. <u>Id.</u> The court explained that "[t]he letter was written at a time when [the attorney] had already acquired the property, yet not only did it fail to disclose [the attorney's ownership], it affirmatively sought to induce the Nisenzons to take no action on their claims against [the client] for several months by dangling before them the prospect that" the client would repay the loan. <u>Id.</u> If the attorney had disclosed his own ownership of the property, this "would have alerted the [lender] that their presumed security for any eventual repayment from [the client] was nonexistent." <u>Id.</u> In short, the omission rendered the attorney's affirmative assurances, provided in response to the creditor's relevant inquiry, misleading. <u>Nisenzon</u>, however, is distinguishable from the case at bar in that Transamerica does not allege that it made any relevant inquiries or that Defendants provided incomplete or misleading answers or statements of any kind about the alleged omissions in question.

This case is more similar to <u>In re: Martino</u>, in which the court rejected a nondisclosure claim because the plaintiff failed to inquire about the issues. In <u>In re: Martino</u>, 108 B.R. 394, 400 (D.R.I. 1989), the court explained that the defendant's failure to inform the buying partnership in a real estate deal of the fact that he was involved in both sides of the real estate transaction did "not amount to intentional concealment" giving rise to a fraud claim "under

Rhode Island law." The court explained that there was no fraud because neither of the plaintiffs "ever questioned" the defendant's involvement in the selling partnership. Id. "Simply put, *[the plaintiffs] never tried to obtain any of the information which they now assert was concealed from them.*" Id. (emphasis added); compare Nisenzon, 689 A.2d at 1046 (attorney drafted letter in response to creditor's letter expressing interest in obtaining security in the amount owed); Paterra, 255 A.2d at 765 (co-endorser inquired about whether life insurance would cover the loan in the event of the borrower's death).

Here, as in In re Martino, and in contrast to Nisenzon, the plaintiff fails to allege that it ever "tried to obtain any of the information which [it] now assert[s] was concealed from [it]." In re: Martino, 108 B.R. at 400. Specifically, Transamerica does not allege that it made any inquiry to Defendants about the annuitant's alleged health or life expectancy or whether the annuitant received any compensation for serving as the annuitant, the existence of any familial or other relationship between the annuitant and the investor,[6] or the annuitant's knowledge regarding the terms and conditions of the annuity,[7] and its Application and contract of adhesion demonstrate that it made no such inquiries. Nor, with regard to these topics, does Transamerica allege that any of the Defendants made any affirmative statements that, together with other circumstances

---

[6] To the extent the Application inquired about relationships it was only with respect to the beneficiary's, and any joint owner's, relationship to the *owner* of the annuity, Ms. Rodrigues. See Exhibit A at *Exhibit D* §§2(B) and 3. Thus, when Transamerica wanted to ask about a relationship in its application it knew how to do so, but it asked no questions about the relationship between the beneficiary or the owner/applicant and the annuitant.

[7] In point of fact, there were no statements, communications, or inquiries whatsoever, let alone misrepresentations, about what the annuitant knew and understood when he signed the application. Indeed, the Application does not even ask the *annuitant* for any certification of any kind regarding his level of knowledge regarding the annuity. Rather, the Application's only language regarding knowledge of the annuity pertains to the *investor*, Ms. Rodrigues, and whether she considered that the annuity was appropriate for her investment needs. See Exhibit A at *Exhibit D*, at p.11. Moreover, to the extent there is any ambiguity on this point, it, like any other ambiguities in the contract, must be construed against WRL, as the drafter of this contract of adhesion. See supra, Part I, at p. 8.

#827114v4

not present here, might otherwise have given rise to a "duty to disclose."[8] Indeed, the Amended Complaint is bereft of allegations that any of those answers are in any way inaccurate. Transamerica is a major financial institution that offers its products for sale to a broad and national public on a take it or leave it basis. Transamerica's allegations of material omissions are simply inadequate as a matter of law to constitute fraud.

The rule requiring that the plaintiff actually have inquired about the factual matter that forms the basis of its nondisclosure claim is particularly compelling in a case such as this involving an arms-length transaction and a contract of adhesion that an insurance company offered to the public on its terms and with an application form of its own devising. As one court explained, in holding that the defendant insured did not commit a misrepresentation by failing to disclose two DUI convictions on an application for automobile insurance:

> The general rule regarding the effect of an insurer's inquiry, or lack of inquiry, when taking application for insurance has been stated thusly: "If the insurer propounds questions to the applicant and he makes full and true answers, the applicant is not answerable for an omission to mention the existence of other facts about which no inquiry is made of him, although they may turn out to be material for the insurer to know in taking the risk. Nor can an insurer accepting an application with questions unanswered claim a concealment of matters which the answers to the questions would have disclosed."

Allstate Ins. Co. v. Shirah, 466 So. 2d 940, 943 (Ala. 1985) (quoting 9 G. Couch & R. Anderson, Couch Cyclopedia of Insurance Law § 38:72, p. 388, 389 (2d ed. 1962)). Furthermore, it has "generally been considered [that] the [insurance] applicant's duty has been fulfilled upon making full answers without evasion, suppression, misrepresentation or concealment of the facts *within the reasonable scope of the inquiry*." Southard v. Occidental Life Ins. Co., 142 N.W.2d 351

---

[8] None of the defendants had any duty to disclose to Transamerica the facts in question. Moreover, to the extent Mr. Caramadre and Mr. Radhakrishnan individually were involved in the transaction it was in a representative capacity only. *As individuals*, Mr. Caramadre and Mr. Radhakrishnan *made no representations or omissions whatsoever* to Transamerica, nor did they have any duty to disclose; they therefore cannot be held personally liable for any of the conduct that Transamerica alleges in the Amended Complaint.

#827114v4

(Wisc. 1966) (citing 12 Appleman, Insurance Law and Practice, *Duty to Disclose*, p. 392, § 7292) (emphasis added). Thus, in Testa v. Norfolk & Dedham Mut. Fire Ins. Co., the Rhode Island Supreme Court held that the insured made no misrepresentation in the application for automobile insurance regarding where his car was garaged because the insurance application did not address the garaging issue and the insurance company otherwise made no relevant inquiry. 764 A.2d at 121.[9] Here, none of the Defendants communicated with Transamerica on the factual matters at issue and they owed Transamerica no duty whatsoever to make the disclosures in question. Indeed, several of the moving Defendants were not even parties to the transaction.

In sum, in the absence of special circumstances not present here, the "general rule" is that "one party to a transaction is under no duty to speak out to the other concerning everything he knows about the matter" -- even if "silence" is "meditated and upon a material fact." Paterra, 255 A.2d at 167. Transamerica's allegations are insufficient as a matter of law to bring its claims outside this general rule and therefore the Court should dismiss them.

> **2. Transamerica also fails to allege any actionable fraud because Transamerica has not relied, let alone "justifiably," on any of the alleged material omissions in marketing, offering, and agreeing to its contract of adhesion.**

Transamerica's claims also fail because Transamerica has not relied, let alone "justifiably," on any of the alleged material omissions. As discussed above, Transamerica marketed and sold this product to a nationwide public in a sophisticated fashion, see Exhibit A at *Exhibit B* (product summary), requiring customers to complete Transamerica application forms, see Exhibit A at *Exhibit D* (application), and issuing a Transamerica annuity with multiple and

---

[9] Although the Rhode Island Supreme Court applied Massachusetts law in Testa, Rhode Island law provides essentially the same legal standard that the court applied in Testa for invalidating an insurance contract based on an alleged misrepresentation in an insurance application. See Evora v. Henry, 559 A.2d 1038, 1040 (1989) (misrepresentation in insurance application is material if the insurer issued the policy based on it).

#827114v4

detailed terms representing a quintessential contract of adhesion, see Exhibit A at *Exhibit E* (Transamerica annuity). Transamerica is a sophisticated participant in the financial markets, selling its products nationally. Exhibit B ¶ 20. It knows how to analyze consumer demand, devise products to exploit that demand, evaluate risks, project revenues and profits, and write its adhesion contracts to its maximum legal advantage. Its decision to market the Transamerica annuity to the public must be presumed to be the result of a sophisticated analysis that concluded that it would be profitable in that business without restricting its Transamerica annuity product to annuitants with insurable interests, who are in good health, and who have no ability to receive compensation from serving as such. Its decision to impose no disclosure or eligibility requirements on applicants for these annuities regarding the annuitant's health or the existence of any particular relationship between the investor and the annuitant must be presumed to result from such an analysis. Transamerica made a business decision that its annuity would be sufficiently profitable in the absence of such restrictive requirements that would potentially curtail its receipt of premium dollars. Its current effort not only to absolve itself from its obligations under the Transamerica annuity, and to pursue its an array of tort claims against its customers and others, is nothing more than a bad faith attempt to garner a windfall at the expense of its customers.

In this respect the case is analogous to Pharmacy Services, in which the court granted summary judgment against a plaintiff on its misrepresentation claim based on its business partner's (Swarovski crystal's) failure to disclose at the time of contracting that it intended to terminate the plaintiff as an authorized Swarovski dealer in the near future as part of its marketing strategy. Pharmacy Services, 2006 U.S. Dist. LEXIS at * 10. Because the authorized-dealer contract was terminable at will, it did not give rise to "any reasonable expectation that the

relationship would continue for any particular time," and the court therefore concluded that there was no detrimental reliance and no misrepresentation. Id. Here, similarly, there was no provision in Transamerica's marketing materials, its application, or the Transamerica annuity regarding, for example, the health status of the annuitant; therefore, Transamerica cannot establish that it detrimentally relied on this type of information in agreeing to the contract. Simply put, the Transamerica annuity did not give rise to "any reasonable expectation" regarding Mr. Garvey's health status or the other non-disclosures that Transamerica now complains of, because this was a choice Transamerica made when it designed this particular investment vehicle.

In short, Transamerica simply cannot establish detrimental, let alone justifiable, reliance in this case. Zaino, 818 A.2d at 638 (justifiable reliance is a required element of fraud claim).

### 3. Transamerica fails to allege fraud because the omissions, if any, were not even material and Transamerica waived any such claims by accepting the application.

Transamerica's allegations regarding the compensation of the annuitant, the lack of a pre-existing or insurable interest relationship between the investor and the annuitant, Mr. Garvey's level of knowledge regarding the terms and conditions of the annuity, and the alleged health status of the annuitant also fail to support a fraud claim for the further reason that these omissions were not even material. As one court from the insurance context explains, under the "modern" rule, "the information not asked for" in the application "is presumed to be unimportant [i.e., immaterial] to the insurance company." Southard, 142 N.W.2d at 358. Transamerica effectively waived any claim of "materiality" by declining to include any questions about these issues in the application form it created for its contract of adhesion. See Russ & Segalia, supra, § 81:39 (there is a presumption that an insurer "waives inquiry into matters concerning

information that is not requested"). Moreover, most of the issues that Transamerica complains of (specifically, the relationship, if any, between any of these Defendants and Mr. Garvey, any alleged payments to Mr. Garvey, Mr. Garvey's level of understanding of the annuity, and the identity of the agent who sold the contract[10]) have no bearing on the risk it assumed in issuing the contract and therefore they cannot have been material to its decision to agree to the contract. See Evora v. Henry, 449 A.2d 1038, 1040 (R.I. 1989) (a misrepresentation is material only if it "induces the insurer to insure the applicant"). For all these reasons, Transamerica has failed to allege materiality of the alleged omissions.

### 4. Transamerica cannot avoid its obligations under the annuity contract based on the annuitant's alleged lack of understanding of the Application that the annuitant signed.

Finally, Transamerica cannot avoid its obligations under the annuity contract by alleging that the annuitant lacked knowledge or understanding of the annuity. Given that it is a well-settled rule under Rhode Island law that "a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its

---

[10]In addition to alleging material omissions by the moving Defendants, Transamerica alleges that co-Defendant Mr. Maggiacomo made a "false" "representation on the application that he was the agent who sold the [Transamerica] Annuity," Exhibit B ¶ 45, based on its allegation that "Garvey did not know and had never met Maggiacomo as of the time the application was signed or submitted." Id. ¶ 35. Transamerica's own application, however, directly contradicts its position that Mr. Maggiacomo was not "the agent who sold the annuity." Id. As to Transamerica, Lifemark, and Mr. Maggiacomo, the customer for purposes of selling the annuity was *Ms. Rodrigues*, the individual who purchased and paid for the annuity. The application is clear on its face and contains no language attributing anything to Mr. Maggiacomo other than determining that the investment was appropriate for Ms. Rodrigues. See Exhibit A at *Exhibit D* (p. 12 of 12, and following 2-page Notice). Thus, Mr. Maggiacomo, by signing the application as a representative of Lifemark, made no representations of the kind alleged. In any event, any alleged misrepresentation regarding Mr. Maggiacomo's conduct as an agent were plainly immaterial. Moreover, as an independent broker representing the customer/investor through the application process, Mr. Maggiacomo had no duty to disclose with regard to the other matters that Transamerica complains of, and, even if he did, Transamerica may not impose that duty on the moving Defendants under a civil conspiracy theory since Transamerica nowhere alleges, even at a general level, that the moving Defendants *knew* that Mr. Maggiacomo's conduct violated any duty to Transamerica. See Kurker v. Hill, 689 N.E.2d 833, 837 (Mass. App. 1998) (citing Restatement (Second) of Torts § 876(b)( 1977) (person may be liable in tort if he "knows that the . . . conduct [of another person] constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself"). Indeed, as non-parties to any alleged indirect relationship between Mr. Maggiacomo and Transamerica, how could these Defendants have possessed any such knowledge?

#827114v4

contents," even the annuitant himself could not invalidate the agreement on this basis. Shappy v. Downcity Capital Partners, Ltd., et al., 973 A.2d 40, 46 (R.I. 2009); see Manchester v. Pereira, et al., 926 A.2d 1005, 1012 (R.I. 2007); Fleet Nat. Bank v. 175 Post Road, LLC, 851 A.2d 267, 275 (R.I. 2004); C. & J. Leasing Corp. v. Paolino, 721 A.2d 839, 841 (R.I. 1998). Therefore, neither can Transamerica.[11]

## B.    TRANSAMERICA FAILS TO ALLEGE FRAUD WITH PARTICULARITY AS REQUIRED BY FED. R. CIV. P. 9(B).

Even if the Court were to find a possibly viable fraud theory alleged in the complaint, any such theory has not been alleged with the level of particularity required by Rule 9(b). See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").[12]

Although "great specificity" is not "ordinarily required" to survive a Rule 12(b)(6) motion to dismiss, "[c]ases alleging fraud and misrepresentation constitute an exception" to this rule. Grady, 2008 WL 821610, at *5 (citing Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004); accord, Rodi v. S. New Eng. School of Law, 389 F.3d 5, 15 (1st Cir. 2004). The Rule's "heightened pleading requirement is an effort "to protect a defendant's reputation from harm caused by meritless fraud claims…". Simonet v. SmithKlineBeecham

---

[11] Note that the exception to this general rule under Rhode Island law has no applicability. If a party is induced to enter into a contract/agreement based on fraud or misrepresentation, then the party who has been fraudulently induced is not bound by the contract. See Carlsten v. Oscar Gruss & Son, Inc., 853 A.2d 1191, 1195-96 (R.I. 2004) (quoting Bjartmarz v. Pinnacle Real Estate Tax Service, 771 A.2d 124, 127 (R.I. 2001)). But the annuitant is not challenging the annuity's validity; on the contrary, Transamerica has named him as a *defendant* in this action. Transamerica, of course, does not dispute that *it* had full understanding of the terms and conditions of its own annuity contract of adhesion. Moreover, Transamerica's Amended Complaint nowhere alleges that the annuitant was fraudulently induced to sign the Application in exchange for compensation.

[12] Rule 9(b) is "read expansively to cover associated claims where the core allegations effectively charge fraud." North Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) (applying Rule 9(b) to multiple claims not styled as fraud, including unjust enrichment and tortious interference with business relations claims.). In this case, therefore, these requirements apply not only to Count III (styled as "fraud") but also to Counts I-II, VII, VIII and IX, Transamerica's claims, respectively, for rescission (a fraud-in-inducement claim), declaratory judgment (same), civil liability for crimes and offenses (alleging insurance fraud), civil conspiracy (to commit fraud), and unjust enrichment (seeking restitution of commissions based on alleged civil and criminal fraud).

19

Corp., 506 F.Supp.2d 77, 90 (D.P.R. 2007) (citing U.S. ex rel Karvelas v. Melrose-Wakefield

Hosp., 360 F.3d 220, 226 (1st Cir. 2004) (citing Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir.

1996))). See also James Wm. Moore et al., Moore's Federal Practice § 9.03[1][a] (3d ed. 2009)

(same). It also helps "to minimize strike suits, and to provide detailed notice of a fraud claim to

a defending party." Id. These important policy considerations require that a fraud plaintiff,

conduct an adequate, pre-complaint investigation, to assure that the claim is not irresponsible or

defamatory. Id. Rule 9(b) requires, at a minimum, that the plaintiff aver the *"who, what, where,*

*and when of the allegedly false or misleading representation."* Rodi, 389 F.3d at 15 (emphasis

added).

> In addition, as the First Circuit has explained,

> Turning then to count I, it purportedly asserts a claim for fraudulent inducement,
> allowable under Rhode Island law, Guzman v. Jan-Pro Cleaning Systems, 839
> A.2d 504, 507 (R.I. 2003), but it fails on its face to meet the requirement that "[i]n
> all averments of fraud or mistake, the circumstances constituting the fraud or
> mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b)'s
> heightened pleading standard applies to state law fraud claims asserted in federal
> court. Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 427 (1st Cir.
> 2007).

> The First Circuit also requires a fraud pleader to specify the basis for inferring scienter:

> Rule 9(b)(6) requires not only specifying the false statements and by whom they
> were made but also identifying the basis for inferring scienter. Although the rule
> itself is not pellucid, precedent in this circuit, as in a number of others, is clear:
> The courts have uniformly held inadequate a complaint's general averment of the
> defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth
> specific facts that make it reasonable to believe that defendant knew that a
> statement was materially false or misleading. Greenstone v. Cambex Corp., 975
> F.2d 22, 25 (1st Cir. 1992) (Breyer, J.) (citations omitted), *superseded by statute*
> *on other grounds*, Private Securities Litigation Reform Act of 1995, Pub.L. No.
> 104-67, 109 Stat. 737; see also Romani v. Shearson Lehman Hutton, 929 F.2d
> 875, 878 (1st Cir. 1991), *similarly superseded by statute on other grounds.*

#827114v4

North Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009) (emphasis added); see also Grady, 2008 WL 821610, at *4-5

The Rule imposes further requirements in instances where, as here, a plaintiff brings its fraud claims against a group of defendants. A plaintiff generally may not "group all claimed wrongdoers together in a single set of allegations," but, rather, "must make specific and separate allegations against each defendant." Moore, supra, § 9.03[1][f].

As the court explained further in Archdiocese of San Salvador v. FM Int'l, LLC, 2006 WL 2583262 (D.N.H. September 7, 2006):

> As the court noted in its previous order, this standard "'usually requires the claimant to allege at a minimum the identity of the person who made the fraudulent statement, the time, place, and content of the misrepresentation, the resulting injury, and the method by which the misrepresentation was communicated.'" 2006 DNH 22, 2006 WL 437493, at *7 (quoting 2 Moore, supra, § 9.03[1][b], at 9-18 (footnote omitted)). Furthermore, under Rule 9(b) "'[i]f a claim involves multiple defending parties, a claimant may not usually group all claimed wrongdoers together in a single set of allegations. Rather, the claimant must make specific and separate allegations against each defendant.'" Id. (quoting 2 Moore, supra, § 9.03[1][f], at 9-25 (footnote omitted)).

> In addition,

> Allegations of fraud must be organized "into discrete units that are, standing alone, each capable of evaluation." StockerYale, 453 F.Supp.2d [345, (D.N.H. 2006)] at 350 (quoting In re Boston Tech., Inc. Sec. Litig., 8 F.Supp.2d 43, 55-56 (D.Mass.1998)). And, "where ... 'multiple defendants are involved, each defendant's role in the fraud must be particularized.'" Manchester Mfg. Acquisitions, Inc. v. Sears, Roebuck & Co., 802 F.Supp. 595, 600 (D.N.H.1992) (quoting Shields v. Amoskeag Bank Shares, Inc., 766 F.Supp. 32, 40 (D.N.H.1991)).

S.E.C. v. Patel, 2009 WL 3151143, *4 (D.N.H. September 30, 2009); see also Suna v. Bailer Corp., 107 F.3d 64, 68 (1st Cir. 1997) (holding that, where a plaintiff alleges that the defendant should be held liable for the misrepresentations of a third party, he must plead with particularity

21

those statements that the defendant made to the third party which induced him or her to make the misrepresentations.).

> In cases of civil conspiracy to defraud, for instance,
>
>> it is necessary to plead fraudulent conspiracy with enough specificity to inform multiple defendants of facts forming the basis of the conspiracy charge. National Egg Co. v. Bank Leumi le-Israel B.M., 504 F. Supp. 305, 308 (N.D. Ga. 1980). Such allegations must "delineate among the defendants (as to) their participation or responsibilities" in making the statements which are the subject of the suit, Lerman v. ITB Management Corp., 58 F.R.D. 153, 155 n. 2 (D. Mass. 1973). Conspiracies described in sweeping and general terms cannot serve as the basis for a cause of action, and may be dismissed. Kadar Corp. v. Milbury, 549 F.2d 230, 233 (1st Cir. 1977).

Van Schaick v. Church of Scientology of California, Inc., 535 F. Supp. 1125, 1141 (D. Mass. 1982).

Transamerica's complaint fails in several respects under these standards. In the key allegations, found in the rescission count (Count I), Transamerica fails to allege *who* is responsible for the alleged material omissions, stating only that "the application did not disclose" the matters of which Transamerica complains. See Exhibit B ¶¶ 43, 44 and 46. But "the application" is not a defendant in this action: individuals and entities whose business reputations are on the line and already threatened by this action are the defendants. For compelling policy reasons, Rule 9(b) obligated Transamerica to specifically lay out its charges against each of the Defendants. Transamerica does not remedy this defect by alleging that the Defendants acted "in concert," Exhibit B ¶ 55, or that there was a "scheme," id. ¶¶ 15, 16, or that the Defendants, lumped together as a group, "arranged for the submission" of the Application, id. ¶ 57. This is just the kind of failure to "delineate" each Defendant's "participation or responsibilities in making the statements which are the subject of the suit" that, pursuant to Rule 9(b), is fatal to a fraud-based claim. Van Schaick, 535 F. Supp. at 1141.

Transamerica also fails to allege with requisite specificity "the basis for inferring scienter." Cardinale, 567 F.3d at 13. Transamerica's "general averment of the [Defendants'] 'knowledge' of material falsity," id., in the Amended Complaint (Exhibit B ¶¶ 56, 58), is "inadequate" to meet Rule 9(b)'s specificity requirement. Cardinale, 567 F.3d at 13. Given the absence of any questions in the Application regarding the omissions Transamerica centrally complains of, moreover, the Amended Complaint fails to "set[] forth specific facts that make it reasonable to believe" that any of the defendants "knew that a statement [or omission] was materially false or misleading." Id. Closely related to the last point, Transamerica's allegations are also deficient with regard to the *what* element: Transamerica's annuity Application asks nothing, for example, about the health status or life expectancy of annuitants, so how is the Court to infer from the mere allegation that "the application" failed to disclose facts on this topic that the nondisclosure was "material"? According to the refined actuarial tables of an institution like Transamerica, every one of us has a health condition and a life expectancy. Where, precisely, does Transamerica draw the line in deciding that a customer's failure to expound in detail on this subject *sua sponte* constituted "fraud," entitling Transamerica to file suit? Transamerica does not specify.

## C. TRANSAMERICA'S FAILURE TO ALLEGE FRAUD REQUIRES DISMISSAL OF COUNTS VII AND VIII.

Of course, Transamerica's failure to allege fraud not only invalidates its rescission, declaratory judgment, and fraud claims (Counts I-III), based as they are on Transamerica's inadequate fraud allegations, but also it compels dismissal of its derivative claims of civil liability for crimes and offenses and civil conspiracy (Counts VII and VIII). In bringing Count VII (civil liability for crimes and offenses), Transamerica alleges the crime of insurance fraud pursuant to R.I. Gen. Laws § 11-41-29, but the insurance fraud statute, similar to current Rhode

23

Island common law, requires a "written statement" containing "false information." A mere omission, even if material, is not enough. Moreover, it applies only to applications for insurance policies, see R.I. Gen. Laws § 11-41-29, whereas Transamerica's claims pertain to a Transamerica annuity, which is not an insurance policy (see infra, Part IV). Therefore, the Court should dismiss Count VII.

The Court should also dismiss Count VIII (civil conspiracy) because, given the infirmities in Transamerica's fraud claim and its allegations of criminal insurance fraud, Transamerica has failed to allege that the Defendants had a specific intent to do anything illegal or tortious. See Chain Store Maint., Inc. v. Nat'l Glass & Gate Serv., 2004 R.I. Super. LEXIS 81, 29-30 (April 21, 2004) ("[a] civil conspiracy claim requires the specific intent to do something illegal or tortious.'" (quoting Guibeault, 84 F. Supp. 2d at 268)); Read & Lundy, Inc. v. Washington Trust Co. of Westerly, 840 A.2d 1099, 1102 (R.I. 2004) ("'[c]ivil conspiracy is not an independent basis of liability. It is a means for establishing joint liability for tortious conduct; therefore it requires a valid underlying tort theory.'") (quoting Guibeault, 84 F. Supp. 2d at 268)).[13]

### IV. TRANSAMERICA'S "INSURABLE INTEREST" ARGUMENT IS UNAVAILING BECAUSE THE TRANSAMERICA ANNUITY IS NOT AN INSURANCE POLICY.

Transamerica cannot save its invalid claims by alleging the lack of an insurable interest between Ms. Rodrigues and Mr. Garvey, entitling it to declare the Transamerica Annuity void *ab initio.* See Exhibit B ¶¶ 49-50, 53. . Rhode Island statutory law squarely undermines Transamerica's assertion that annuity contracts should be equated with life insurance policies

---

[13] Although Defendant Edward Maggiacomo Jr. is not a party to this motion, Count IX ("unjust enrichment") against him, dependent by its own terms on the "tortious and criminal acts" in Transamerica's previously stated fraud-based counts against Mr. Maggiacomo, see Exhibit B ¶ 85, also fails where those claims fail. See Cardinale, 567 F.3d at 15 (declining to "separately discuss unjust enrichment" claim since an element of the claim was "some wrong that makes the enrichment culpable" and plaintiff failed adequately to allege fraud or breach of fiduciary duty).

and, therefore, subject to the insurable interest requirement. Indeed, Rhode Island statutory law expressly and unambiguously distinguishes annuities from life insurance. Annuities and life insurance have separate and distinct statutory definitions, such that the definition of "life insurance" does not encompass "annuities," and vice versa. The definition of "annuities" expressly excludes "payments made in connection with a life insurance policy." R.I. Gen. Laws § 27-4-0.1(a). Similarly, the definition of "life insurance" does not encompass, or even reference, "annuities." R.I. Gen. Laws § 27-4-0.1(c). Simply put, the Transamerica annuity is not a life insurance policy. It is an annuity contract issued by a life insurance company, which scrupulously has avoided, in the 27 pages of the contract's fine print, any reference to life insurance. The Transamerica annuity's death benefit is not insurance on the life of any person, but a contract measure of the value of the investment by the Transamerica annuity's owner, which Transamerica has obligated itself to pay upon the annuitant's death. Thus, the "insurable interest" rule does not apply.

As the mutually exclusive definitional provisions just quoted make clear, the Rhode Island General Assembly recognizes and understands that annuities and life insurance are different and distinct from each other, and that neither encompasses the other. Further reflecting this understanding, some Rhode Island statutes address only annuities.[14] Others address only life insurance.[15] Some statutes explicitly address both.[16] Thus, when the General Assembly wanted

---

[14] See, e.g., R.I. Gen. Laws § 7-11-1101 (defining variable annuities as securities under Rhode Island Uniform Securities Act); id. § 27-4.5-1 (establishing reserve valuation method for annuities).

[15] See, e.g., R.I. Gen. Laws § 27-4-1 (discrimination in rates and benefits); id. § 27-4-6.2 (setting mandatory provisions for life insurance contracts); id. § 27-4-10 (effect of misrepresentations in applications for insurance); id.27-4-11 (protecting proceeds of policies from creditors); id. § 27-4-13 (preventing provisions in life insurance policies from depriving courts of jurisdictions); id. § 27-4-17 (DBR's annual valuations of policies); id. § 27-4-25 (access to medical information).

[16] See, e.g., R.I. Gen. Laws § 27-4-6.1 (establishing "free look" period and expressly distinguishing between "life insurance policy" and "annuity contract"); id. § 27-4-12 (allowing prevention of beneficiaries from alienating or encumbering benefits); id. § 27-4-13.1 (interest rates); id. § 27-4-24 (requiring filing of forms with insurance commissioner); id. § 27-4-26 (interest rates).

a statute to encompass both annuities and life insurance, it knew how to do so, and it carried out such an intent through express statutory language. Similarly, when the Rhode Island legislature wanted to address only life insurance, without encompassing annuities, it did so through express statutory language that encompassed only life insurance and not annuities.

Rhode Island's "insurable interest" statute is an example of a situation in which the General Assembly intended to address only life insurance policies and not annuities. The word "insurance" appears numerous times in that statute; in stark contrast, the word "annuities" does not appear anywhere in that statute, not even once. Indeed, the sentence that sets forth the insurable interest requirement references only "insurance" – specifically, "insurance contract[s] upon the life or body of another individual" – but the word "annuities" does not appear. R.I. Gen. Laws § 27-4-27(a). Thus, the insurable interest requirement set forth in the statute applies only to life insurance, but not to annuity contracts.

Rhode Island's insurable interest statute is consistent with the statutes of almost every other state, which impose an insurable interest requirement on life insurance, but not on annuities. See, e.g., Cal. Ins. Code § 10110.1; Del. Code Ann. tit. 18, § 2704; Fla. Stat. § 627.404; N.J. Stat. Ann. § 17B:24-1.1; Va. Code Ann., § 38.2-301.[17] Some states (not Rhode Island) provide exceptions in limited, specified circumstances. For example, some states grant minors of a certain age the right to contract for annuities, but also impose the requirement that the beneficiary of such annuities have an insurable interest in the minor. E.g., Ala. Code § 27-14-5. Federal law also provides certain exceptions. One example is the Survivor Benefit

---

[17] Moreover, the only two states, Alaska and Nebraska, that apply their insurable interest statutes to annuities in all circumstances have enacted statutory language that *expressly* encompasses both annuities and insurance contracts. See Alaska Stat. § 21.42.020(d); Neb. Rev. Stat. § 44-704. See also *Memorandum Opinion and Order*, In re: McClure v. McClure, Bankr. No. 98-14932 (Bankr. D.K.S. December 22, 1999) (finding annuity contract did not qualify as "insurance" under Kansas law because premium not based on age, health, or life expectancy but on owner's investment), avail. at http://www.assetprotectionbook.com/mcclure.pdf.

#827114v4

Plan, which specifically creates a product called an "insurable interest annuity."  See 10 U.S.C. § 1448(b).  These exceptions demonstrate that legislatures know how to apply the insurable interest requirement to annuities, and when that is the legislative intent, the exceptions are expressly set forth in the statute.  These exceptions also demonstrate that those legislatures recognize that their general statutory provisions on insurable interest do *not* apply to annuity contracts.

The Court should not convert Transamerica's annuity into a life insurance policy for an additional reason:  Transamerica chose *not* to include any insurable interest requirement in its marketing materials, in the annuity application, or in the myriad provisions of its lengthy contract.  See Exhibit A at *Exhibits B, D*, and *E*.  The Transamerica annuity, as well as the application (see supra, n. 6), demonstrates that Transamerica knew how to impose or inquire about a "relationship" requirement when it chose to do so; for example, by imposing separate procedures for the distribution of death proceeds when the beneficiary is the deceased Annuitant's surviving spouse, when the beneficiary is a different individual than the owner, and when the beneficiary is not a natural person.  See Exhibit A at *Exhibit E*, § 9 (p. 13).  But, despite the fact that this is the quintessential contract of adhesion in which Transamerica could have included any lawful provisions that it desired, Transamerica chose not to impose an insurable interest or relationship requirement as a predicate to offering the contract to the public at the price that Transamerica set.  Because it chose not to do so, Transamerica has no basis to ask the Court to create or impose such a provision on its behalf.  See Quigley, 373 A.2d at 813-14; see also Rumbin v. Utica Mut. Ins. Co., 757 A.2d 526, 529 n. 6 (D. Conn. 2000) (annuity contract that is preprinted and standardized, and that provides no opportunity for negotiation, is a contract of adhesion).

27

## CONCLUSION

For the foregoing reasons, Defendants Joseph A. Caramadre, Raymour Radhakrishnan, Estate Planning Resources, Inc. and Estella Rodrigues respectfully request that this Court dismiss all counts against them in Plaintiff's Amended Complaint.

Respectfully submitted,

JOSEPH A. CARAMADRE, ESTELLA RODRIGUES, ESTATE PLANNING RESOURCES, INC., AND RAYMOUR RADHAKRISHNAN
By their Attorney,


*/s/ Robert G. Flanders, Jr.*
Robert G. Flanders, Jr. (#1785)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel. (401) 274-2000
Fax. (401) 277-9600
rflanders@haslaw.com


Dated: November 13, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2009, a copy of the within document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


*/s/ Robert G. Flanders, Jr.*

#827114v4