UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY,<br>                Plaintiff<br><br>vs.<br><br>JOSEPH CARAMADRE, RAYMOUR RADHAKRISHNAN, ESTATE PLANNING RESOURCES, INC., ESTELLA RODRIGUES, EDWARD MAGGIACOMO, JR., LIFEMARK SECURITIES CORP., and PATRICK GARVEY,<br>                Defendants. | C.A. No.: 09-471-S |

## **DEFENDANT EDWARD MAGGIACOMO JR.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION TO DISMISS**

**I.  INTRODUCTION**

Defendant Edward Maggiacomo hereby replies to the Memorandum In Support of Plaintiffs' Objection to his Motion To Dismiss in the within matter. In so doing, Mr. Maggiacomo represents to the Court as follows:

First, he joins in and adopts all arguments made in the Reply Memoranda simultaneously filed in this matter by all other Defendants. These Memoranda reply to arguments made in Plaintiffs' various objections, in this case and the related cases, to the various Motions to Dismiss filed by the Defendants, all of which apply to Mr. Maggiacomo's arguments in his Motion To Dismiss and the Motions to Dismiss filed by the other Defendants in which Mr. Maggiacomo joined. The matters set forth in this separate Reply Memorandum are not included in the Reply Memoranda filed on behalf of other Defendants.

1

Second, it should be stated clearly that the arguments made here are offered for consideration only in the event that the Court is inclined to deny the Motions to Dismiss. Mr. Maggiacomo submits that the arguments made in the Reply Memoranda filed by the other Defendants, and in which Mr. Maggiacomo has joined, are correct statements of the law and fully support the positions taken on those issues; i.e., *inter alia*, that there is no insurable interest requirement applicable to annuity contracts in Rhode Island; that the annuity contracts themselves, particularly in the incontestability clauses, estop the Plaintiffs from making any claims against any Defendant; that there was no fraudulent failure to disclose information by any Defendant because no Defendant had any duty to make any such disclosure; that Plaintiffs' several complaints are insufficiently pled as to Rule 9(b); and all other arguments in support of the legal positions taken in the Motions to Dismiss.

Mr. Maggiacomo further submits that each and every argument made in the other Reply Memoranda and the original Memoranda in support of the various Motions to Dismiss is fully supported by existing Rhode Island statutory and common law; i.e., that the law in Rhode Island is not unclear, or ambiguous, or capable of any interpretation other than that offered by the Defendants in support of their arguments. In fact, it is the Plaintiffs who have suggested to this Court other interpretations of Rhode Island law that are favorable to them, but clearly and unequivocally contrary to the state of existing Rhode Island precedent and statutory jurisprudence, and are otherwise simply incorrect and unsupported.

Mr. Maggiacomo respectfully suggests, however, that in the event that the Court is of the opinion that Rhode Island law is not as clearly in support of Defendants' arguments as they submit, that the correct alternative is not to adopt the Plaintiffs' suggested interpretations, but instead to apply the principles of Abstention, Certification, and the Primary Jurisdiction

Doctrine, to have the relevant matters decided by the appropriate Rhode Island state courts and agencies. This is so because the matters before the Court are so significant to the statutory, regulatory, and common law of Rhode Island, in the context of the highly regulated insurance and annuity industries, that they should not be the subject of federal judge-made law if this Court is of the opinion that Rhode Island law does not already support Defendants' positions.

The principles underlying the application of abstention, certification, and the primary jurisdiction doctrine, arise from circumstances where there is insufficient clear precedent in state jurisprudence upon which a federal court can definitively rely in interpreting or predicting state law. The Defendants believe, and have argued persuasively, that the existing state of Rhode Island law leaves no doubt whatsoever that their positions are legally correct. Defendants have made no suggestion to the Court that the law is in anyway unclear or ambiguous with respect to any of these issues, but rather that it is easily understood and applied. To the extent, however, that the Court disagrees, or that law is simply absent on a particular point, the matters at issue here are of the type that require state review rather than that of the federal court, at least in the first instance. Mr. Maggiacomo therefore submits that the arguments made here and in the corresponding portions of his initial Memorandum should be considered not at the outset, but only as an alternative to denial of the motions should this court disagree with all the other arguments offered by Defendants.

## II. ARGUMENT

In his original memorandum, Mr. Maggiacomo argued that only in the event this Court did not agree with Defendants' positions on the critical issues, those matters were of such significance, and rulings on them would be in such derogation of Rhode Island law and with such expansive consequences, that abstention under <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315

(1943), and its progeny, and/or application of the Primary Jurisdiction Doctrine, or alternatively Certification of certain questions to the Supreme Court of Rhode Island, would be appropriate. See, *Defendant Maggiacomo's Memo. in Supp. of Mot. to Dismiss*, C.A. No. 09-471-S, at pp. 20-28. Plaintiffs, of course, disagree. See, e.g., *Plaintiffs' Consolidated Memo. in Response to Defendants' Motions to Dismiss*, C.A. No. 09-471-S at pp. 58-62.

A. Abstention

In contesting Mr. Maggiacomo's position on abstention, Plaintiffs cite in contrast Dunn v. Cometa, 238 F.3d 38, 42 & n. 3 (1st Cir. 2001). In Dunn, abstention was deemed appropriate for many of the same reasons that exist here. One is that "this case presents purely state law claims" which very clearly involve "state policy decisions" regarding the "legal framework to be applied." Plaintiffs' suggestion that this case involves merely "abstract legal questions" as a basis for rejecting abstention, fails to note that in Dunn, the First Circuit found that had the "abstract legal questions" predominated, the remedy would more likely have been certification to the state Supreme Court. That alternative has been suggested here as well.

Plaintiffs also cite Armistead v. C & M Transport, Inc., 49 F.3d 43, 48 n. 4 (1st Cir. 1995) in the same context, directing the Court to the opinion's acknowledgement that abstention was appropriate only because the state favored "an exclusive administrative process." As the Court is aware, the business of insurance is heavily regulated, not only in Rhode Island, but also in every other jurisdiction. See, e.g., Hipsky v. Allstate Insurance Co., 304 F.Supp.2d 284, 291 (D.Conn. 2004) ("[i]nsurance is a complex and highly regulated industry"). At the most basic level of application to Rhode Islanders, it is the Department of Business Regulation, in applying the statutory definitions and other relevant provisions of insurance and/or annuity law, as enacted by the General Assembly, and in monitoring, policing, and regulating the operations of insurance

4

companies in general, that controls the interaction between our citizenry and Plaintiffs' products. This is hardly "an ordinary diversity case involving state law."

B.   Primary Jurisdiction Doctrine

Plaintiffs also argue that the Primary Jurisdiction Doctrine applies only when an active state regulatory or administrative proceeding is underway, and they further suggest that there is no such proceeding.  See, e.g., *Plaintiffs' Consolidated Memo. in Response to Defendants' Motions to Dismiss*, C.A. No. 09-471-S at p. 61.  As Mr. Maggiacomo stated in his initial memorandum, such a proceeding is indeed pending.  See, e.g., *Defendant Maggiacomo's Memo. in Supp. of Mot. to Dismiss*, C.A. No. 09-471-S, at p. 27.[1]  Nevertheless, what is necessary is that the underlying matter before the court requires an administrative determination of an issue within the scope of the agency's responsibility due to the lack of "legislative or administrative guidance."  See, Commonwealth of Massachusetts v. Blackstone Valley Electric Co., 67 F.3d 981, 992-93 (1st Cir. 1995).   This is especially true in policy matters of intense regulation.  See, e.g., Engelhard Corp. v. Springfield Terminal Railway Co., 193 F.Supp.2d 385, 386 (D.Mass. 2002) (on motions to dismiss, matter stayed pending referral to the Surface Transportation Board in highly regulated area).

C.   Certification

Finally, Plaintiffs' argument against certification of certain questions to the Rhode Island Supreme Court is fatally undercut by their own earlier argument concerning the application of the Economic Loss Doctrine (See, e.g., *Plaintiffs' Consolidated Memo. in Response to*

---

[1] A complaint filed by Nationwide Insurance on February 6, 2009 is presently pending before DBR, but at this stage of a DBR proceeding it is not public and for that reason cannot be documented here.  The complaint does, however, directly place before DBR the applicability of the insurable interest requirement, the question of whether STATs are against public policy, and it involves a number of Nationwide Annuity Contracts that are the same as the contract at issue in Nationwide Life Insurance Company v. Steiner, C.A. No. 09-235-S, which is also presently pending before the Court.  During this investigation, DBR has pursued document requests and requested and received responses from the parties. As of the last contact with DBR in October of 2009, the matter continues as an active investigation.

*Defendants' Motions to Dismiss*, C.A. No. 09-471-S at pp. 50-57). In response to the argument that Plaintiffs' negligence claims are precluded by application of the economic loss doctrine insofar as it has been explicated and applied in Rhode Island law, Plaintiffs contend that this Court should not extend the application of Rhode Island law beyond where it seems to be from the few state court decisions on the subject, because this Court cannot, on the basis of such scarce relevant jurisprudence, come to any definitive conclusion about what the Supreme Court would say on the subject. Plaintiffs cite for that proposition Veilleux v. National Broadcasting Co., 206 F.3d 92, 131 (1st Cir. 2000). The actual language from Veilleux is instructive here:

> Hence, we are reluctant to expand this relatively undeveloped doctrine beyond the narrow categories addressed thus far. *See* Dayton v. Peck, Stow and Wilcox Co., 739 F.2d 690, 694-95 (1st Cir. 1984) (federal court in diversity case will not innovate in state law); *see also* Nieves v. Univ. of Puerto Rico, 7 F.3d 270, 278 (1st Cir. 1993) (noting that "[s]tate-law claimants who bypass an available state forum generally are not entitled to adventurous state-law interpretations from the federal forum"). [emphasis supplied]

Citing Veilleux, this position was very recently taken again in Descoteau v. Analogic Corp., 2010 WL 325933, *7 (D.Me., Jan. 21, 2010). Plaintiffs could have brought this action in state court and settled the core issues in the proper forum, but chose not to.

Mr. Maggiacomo suggests that if this Court is not inclined to follow what Rhode Island law already exists on the subject, that any change to Rhode Island jurisprudence, in this highly regulated area, having such broad and far-reaching ramifications, should require an interpretation of state law, on very specific questions, from the Supreme Court.

It is clear from the pleadings that the most critical of the legal issues before the Court is whether Rhode Island law requires an insurable interest in annuity contracts. The only statute cited by Plaintiffs in support of their argument, R.I.GEN.LAWS §27-4-27, specifically uses the term "insurance contract." There are separate and distinct definitions of "insurance" and

6

"annuity" in Rhode Island law, as well as numerous other differences between these two products.[2] At bottom, this requires a determination as to whether (a) annuities are insurance contracts in the State of Rhode Island, or alternatively (b) whether the insurable interest statute should apply to annuities whether or not they are insurance contracts. The answers to these questions will affect the entire annuity and insurance industries in the State of Rhode Island, with ramifications on nearly every type of life insurance policy or annuity contract. It will also significantly impact the regulatory scheme by which the Department of Business Regulation monitors these industries. As Plaintiffs themselves note in their citation to Pyle v. South Hadley School Committee, 55 F.3d 20, 22 (1st Cir. 1995), certification was found appropriate there because the "construction of [the] state statute would 'dictate state-wide policy [on the relevant issue]'."

Any interpretation of the insurable interest statute favorable to Plaintiffs, in the context of current Rhode Island law, would have the same effect here. With all due respect to this Court, Defendants believe that such determinations, with their far-reaching consequences, should be made in the first instance by the Supreme Court, and/or by the General Assembly. See, e.g., Hipsky v. Allstate Insurance Co., supra, 304 F.Supp.2d at 293 n. 14 ("'[i]nsurance is a complex and highly regulated industry. As a result, "the realm of insurance law is an exceptionally inappropriate area for judicial creativity" ... The creation of new insurance rights and remedies is best left to the legislature.' *Thompson,* 2 C.S.C.R. at 649 (citation omitted).")

Likewise, Plaintiffs' claim that certification is not necessary if there is sufficient guidance in state law, while a correct legal statement, has no application here. For example, in Benesowitz

---

[2] For example, in terms of state and federal regulation, annuities are considered "securities" (see R.I.GEN.LAWS §7-11-101, defining variable annuities as securities under Rhode Island law), and regulated as such. As Plaintiffs point out in their *Amended Complaint* [in C.A. No. 09-471 at ¶28], because these annuity products are in fact securities, only certain of the defendants had the qualifications required to sell them.

7

v. Metropolitan Life Insurance Co., 471 F.3d 348, 352 (2d Cir. 2006), the Second Circuit was faced with a situation very similar to that before this Court—the interpretation of a state statute critical to the insurance industry, where the New York Court of Appeals had not previously spoken:

> We are asked to construe a New York statute, a task that is obviously central to the jurisdiction of the New York courts. In addition, the insurance industry in New York is highly regulated by the state, and states have a strong interest in supervising highly regulated industries.

The Second Circuit certified the question to the New York Court of Appeals.

The insurable interest statute has never been interpreted by any court in Rhode Island; the differences between stranger owned life insurance (STOLIs) and stranger owned annuities (STATs) are recognized in the recent enactment by the General Assembly of the "Life Settlements Act", R.I.GEN.LAWS §27-72-1, *et seq.*; and there has been much reported litigation over STOLIs and almost none discovered concerning STATs. What is clear, however, is that annuities and insurance are as intensely regulated on a state-by-state basis as any industries can be. See, e.g., Golden v. Winjohn Taxi Corp., 311 F.3d 513 (2d Cir. 2002) (insurance industry highly regulated; insurance question of statutory interpretation certified to New York Court of Appeals). Each and every jurisdiction has its own lengthy and elaborate statutory framework governing the operation of insurance companies and the sale of both annuity and insurance products. Every jurisdiction has an administrative agency and/or a state regulatory body whose function includes the oversight, monitoring and regulation of these industries, and companies that sell and market these products.[3]

---

[3] Except to the extent that annuities are federally regulated securities (which is not an issue in this litigation), the regulator in Rhode Island is the Department of Business Regulation, which is presently investigating this very issue.

In summary, while Mr. Maggiacomo submits that in the first instance the Court should grant the Motions to Dismiss without reservation and in all respects, to the extent that there is any question as to whether Plaintiffs' positions are sustainable, those decisions, in the context of these complaints and the matters to which they relate, should be made by the State of Rhode Island, in its courts, its regulatory agencies, and its legislature.

> EDWARD MAGGIACOMO, JR.
> By his Attorney,
> */s/ Anthony M. Traini*
> Anthony M. Traini
> Anthony M. Traini, P.C.
> 56 Pine Street, Suite 200
> Providence, RI 02903
> Tel. (401) 621-4700
> Fax. (401) 621-5888
> amt@trainilaw.com

Dated: February 22, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2010, a copy of the within document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

> */s/ Anthony M. Traini*