**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

|  |  |  |
|---|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY, | : : | |
| Plaintiff | : : | |
| vs. | : : | C.A. No. 09-471 |
| JOSEPH CARAMADRE, RAYMOUR RADHAKRISHAN, ESTATE PLANNING RESOURCES, INC., ESTELLA RODRIGUES, EDWARD MAGGIACOMO, JR., LIFEMARK SECURITIES CORP., and PATRICK GARVEY, | : : : : : : : | |
| Defendants | | |

### DEFENDANT LIFEMARK SECURITIES CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTIONS TO DISMISS

### I. Introduction

Plaintiff Transamerica Life Insurance Company's ("Transamerica") claims against Defendant LifeMark Securities Corporation ("LifeMark") only (breach of contract, declaratory judgment, breach of duty of good faith and fair dealing) are addressed in the within Reply Memorandum of Law in further support of LifeMark's motions to dismiss.[1] In addition, and in accordance with the Court's Scheduling Order ( CA 09-471,ECF Document No. 34; CA-09-549, ECF Document No. 8), LifeMark specifically adopts and incorporates by reference arguments set forth in Defendants' Consolidated Reply Memorandum In Further Support of Their Motions to Dismiss (Ca-

---

[1] LifeMark filed motions to dismiss in CA 09-471 and CA-09-549 and this Reply addresses the arguments made in both motions and in Plaintiff's Objections to Defendants Motions to Dismiss.

Dockets.Justia.com

09-471, ECF Document No.39; CA 09-549, ECF Document No. 21) with respect to all Counts.[2]

## II. Argument

### A. The Breach of Contract Counts Should Be Dismissed Because Of Insufficient Allegations That LifeMark Breached Its Agreement With Transamerica.

To survive a motion to dismiss the breach of contract claim against LifeMark, Transamerica must set forth sufficient facts to show (1) the existence of a valid contract; (2) that LifeMark breached its duties under the contract, and (3) that this breach caused damage to Transamerica. *See Mann v. Chase Manhattan Mortg. Corp.*, 2002 WL 32157516, at 4 (D.R.I. 2002).

Transamerica alleges that it entered into a General Agent Agreement (the "Agreement") with Lifemark to broker the sale of annuity contracts. (A copy of the Agreement is attached to Plaintiffs' Objection to Defendants' Motions to Dismiss as Exhibit A).[3] Transamerica further alleges the Agreement applied to the issuance of certain annuity contracts to various owners (the "Annuity Contracts").[4] It asserts that LifeMark breached the Agreement (1) by failing to train and supervise its agent, Maggiacomo, (2) by arranging for Radhakrishan to sell the Annuity Contracts, (3) by permitting the annuitants to be paid to sign the application for the Annuity Contracts

---

[2] Defendants are referred to herein as follows: Joseph Caramadre ("Caramadre"), Raymour Radhakrishnan ("Radhakrishnan"), Estate Planning Resources, Inc. ( "EPR Inc."), Estella Rodrigues ("Rodrigues"), Edward Maggiacomo ("Maggiacomo") and collectively as "Defendants".
[3] Transamerica did not attach the Agreement to its Complaint in CA 09-471 or 09-549, but attached it to its Objection to Defendants' Motions to Dismiss in both cases.
[4] CA 09-471 involves one annuity contract and 09-549 involves six annuity contracts. All of the annuity contracts were allegedly subject to the same Agreement between Lifemark and Transamerica and are collectively referred to herein as the "Annuity Contracts".

2

and (4) by arranging for the issuance of the Annuity Contracts without an insurable interests in the annuitants' lives. All of these allegations are based upon an unfair, unreasonable contortion of the nature of the relationship between Transamerica and LifeMark, and a misfocused, inaccurate description of the Annuity Contracts.

LifeMark is a broker dealer in the insurance and securities industry. The Agreement provides that LifeMark accepted the appointment as Transamerica's broker dealer to sell annuity contracts as "independent contractors". *See* Exhibit A at ¶ 1. This appointment was to sell variable annuity contracts pursuant to an attached Schedule B. LifeMark represented it would comply with all of Transamerica's applicable procedures, ethical principles, manuals and regulations." *See* Exhibit A at ¶ 4. Additionally, the Agreement provides:

> "Nothing in this Agreement, nor any acts of the parties hereto, shall be deemed or construed by the parties hereto, or either of them, or any third party, to create the relationship of employer and employee, or partnership or joint venture, or except to the extent expressly provided herein, principal and agent.." *See* Exhibit A at ¶ 11(g).

The Agreement unambiguously provided that LifeMark agreed to act as a broker dealer in selling annuities. *See* Exhibit A at Schedule B. Accordingly, LifeMark brokered and sold what they believed to be Annuity Contracts , and followed the application process written and prescribed by Transamerica for such contracts.

Obviously, as an experienced broker dealer in both the insurance and securities industries, LifeMark, like Transamerica, was well aware of the major substantive differences between annuities and life insurance. LifeMark complied with all the terms of the Agreement in its issuance of the Annuity Contracts as annuities, not as a

3

life insurance policies.[5]

Transamerica has not demonstrated in their complaints or exhibits any basis for their conclusory statements about the duties of LifeMark. The specific terms of the Agreement do not support in any way Transamerica's bald attempt to impose extra-contractual and unreasonable duties on LifeMark in its narrow role as broker dealer of the Annuity Contracts.[6] In a bizarre retrospective twist, they take the position that Lifemark should have treated the Annuity Contracts as if they were life insurance policies. However, there is no basis for such a claim since Transamerica plainly never treated the Annuity Contracts like life insurance policies in any way whatsoever. The words "life insurance" or "insurable interest" are not mentioned anywhere in any of Transamerica's Annuity Contracts. By alleging that LifeMark and the other Defendants should have been aware that Transamerica was treating the death benefits portion of the Annuity Contracts as life insurance[7], thereby requiring LifeMark and Maggiacomo to comply with Rhode Island laws relating to issuance of life insurance

---

[5] In addition to the different tax treatment of life insurance policies and annuity contracts discussed in Defendants' Consolidated Reply Memorandum, if Transamerica's theory that a variable annuity is life insurance is to be believed they would need to have an actuarial pricing model supporting the cost of insurance in the contract and would need to include medical underwriting in the process. Additionally, Transamerica would have to meet the regulatory requirements submitting the necessary information for state approval of such life insurance policies. Since the Annuity Contracts are not insurance policies, none of this was done by Transamerica.

[6] By its very nature, every annuity contract is a situation wherein longevity of the annuitant's life is the variable upon which outcome depends. Transamerica has an economic interest that is different than the annuity owner. In a life-no refund option on an annuity, the issuer makes more if the annuitant's life is shorter. For example, if an issuer sells a customer a $750,000 single premium annuity and the annuitant dies a few months later, the customer may only receive $30,000 in a few months' payments and the issuer will receive a windfall.

[7] The death benefit is marketed as a sales feature or enhancement to attract investors and the cost to Transamerica of providing it is negligible since it only has value if the annuitant dies before annuitizing and the value of the contract is less than the original investment. A "death benefit" is nothing more than

contracts, is an overtly unfair and unreasonable re-write of the Agreement after the fact.[8] As discussed at length in Defendants' Consolidated Reply Memorandum at p. 13-16, it cannot be disputed that Transamerica designed the Annuity Contracts and all of the related advertising, marketing and application material with full knowledge that they were not life insurance policies. Transamerica never requested any insurable interest information, health care information, or life expectancy information from the applicants for the Annuity Contracts or from the annuitants. In fact, if LifeMark had unilaterally obtained and provided healthcare information to Transamerica without the owner's or annuitant's consent and without any request for such information in Transamerica's applications forms or in the Agreement, LifeMark would be violating federal medical privacy laws such as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Pub. L. No. 104-191, 110 Stat. 1936 (1996).[9]

Transamerica never informed LifeMark or their agents that any of these subjects were material with respect to the marketing and selling of annuities. Transamerica never provided any direction or guidance or communicated in any manner to LifeMark or their agents regarding these subjects. They cannot and have not alleged that they did. It is only in their retrospective legal arguments in opposition to the motions to dismiss that they conjure up assertions about the failure of LifeMark to perform these

---

the value of the contract at the time of death and Transamerica charges its customers fees for such benefits.
[8] The Agreement, like all the other Transamerica documents attached to the complaints which concern the Annuity Contracts, does not require the customers to provide information concerning health, life expectancy or a description of their relationship to the annuitant, nor does it require LifeMark or its agents to request such information.

previously unstated and mystical "duties." Nowhere in any of the allegations or exhibits can one find the "duties" which Transamerica now tries to foist upon LifeMark. Thus, Transamerica's allegations that LifeMark breached the Agreement by failing to disclose the lack of an insurable interest between the owners and the annuitants and by failing to provide healthcare information to Transamerica are insufficient because such information was not required in the Agreement, was not material to the application process for annuity contracts in the industry, or in any of Transamerica's own application forms or marketing materials.

> B. <u>The Breach of Contract Counts Should Be Dismissed Because Of The Insufficient Allegations That LifeMark Breached Any Duties to Its Customers</u>

Transamerica further attempts to rewrite and stretch the Annuity Contracts and the Agreements not only by transforming the Annuity Contracts into a life insurance policies, but also by wrongly focusing on the <u>annuitants'</u> investment needs, and state of mind, rather than on the investment needs and intentions of the <u>investors</u> - the owners of the Annuity Contracts. Thus, Transamerica's allegations against LifeMark (and Maggiacomo) are insufficient on their face because they are all premised on the strange allegation that the annuitants should be treated like the customers for the Annuity Contracts. In fact, an <u>annuitant's</u> role is merely to be the measuring life of the annuity, whereas the <u>customer</u> is the investor /owner, the party to the contract. Relying on this misplaced premise, Transamerica argues that Maggiacomo breached his duty to ensure

---

[9] Indeed, Transamerica's off base "void ab initio" argument would more aptly apply to the Transamerica Agreement with LifeMark as Transamerica asserts a "duty" which, if performed, would require a broker dealer like LifeMark to violate federal law!

6

that the Annuity Contracts were suitable investments.  Importantly, there is no allegation that the Annuity Contracts were in any way unsuitable investments for the customers.  The allegations that the use of the Annuity Contracts were not suitable as a "long term financial vehicle designed for retirement purposes" are unfounded given that the investments could potentially produce economic gains for the customers.

Lifemark and Maggiacomo complied with their duty to treat the customers fairly and ethically.  Transamerica has completely missed this by focusing on the annuitant, rather than the customer/ investor. Transamerica goes off track again by attempting to place blame on LifeMark for the annuitants' alleged lack of understanding.  The key is what the investor/owner knew and understood.  Importantly, there are no allegations about that which is a material flaw in Transamerica's fanciful expansion of LifeMark's obligations.

In another vague and off-base allegation involving the application process, Transamerica alleges that by not disclosing the involvement of Caramadre or Radhakrishanan in the application process, LifeMark was using "sub-agents" to sell the Annuity Contracts in violation of the Agreement.  It is very common in the industry for accountants, financial planners, attorneys or trust officers to be involved in the recommendation of various investment instruments for customers.  Transamerica alleges this non-disclosure "implicitly represented to Transamerica that no unauthorized individuals had solicited the sale of the annuity."   This allegation is belied by Maggiacomo's signature on each application as the representative agent representing that he complied with the requirement to recommend a suitable investment for the

7

customers' investment needs. There are no allegations or claims by any customers that he did not, and there was no requirement in the Agreement for LifeMark or Maggiacomo to report to Transamerica the role of all other individuals involved in the transactions.

### C. LifeMark Did Not Breach Any Non-Contractual Duties to Transamerica

For the first time in their objection to Defendants' Motions to Dismiss, Transamerica alleges LifeMark had an independent fiduciary duty to Transamerica. There is simply no basis for this allegation. Transamerica has the burden to prove a fiduciary duty exists. *See Bank of Southwest Dallas v. Rauscher*, No. 05-96-00991, 1998 Tex. App. LEXIS 5247, at *12-13 (Tex. App. Aug. 21, 1998) (explaining a fiduciary relationship is a formal, technical relationship of confidence and trust that imposes greater duties upon a fiduciary as a matter of law).

Transamerica's allegations that LifeMark breached independent, non-contractual duties are unsupported. These allegations are based on the same inadequate facts as the allegations for breach of the Agreement. LifeMark acknowledges it brokered the sale of the Annuity Contracts on Transamerica's behalf in accordance with the Agreement. There is no evidence of any special relationship other than the one specifically described in the Agreement.

As noted *supra*, The Agreement specifically defines LifeMark as an "independent contractor", and expressly limits the terms of the relationship between LifeMark and Transamerica as follows:

8

> "Nothing in this Agreement, nor any acts of the parties hereto, shall be deemed or construed by the parties hereto, or either of them, or any third party, to create the relationship of employer and employee, or partnership or joint venture, or except to the extent expressly provided herein, principal and agent.." *See* Exhibit A at ¶ 11(g).

Furthermore, even if LifeMark did owe a fiduciary duty to Transamerica, it is duplicative of the contract provisions that Transamerica claims LifeMark breached. "A simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Kramer v. Lockwood Pension Services, Inc.*, 653 F.Supp.2d 354, 386 (S.D.N.Y. 2009) (citations omitted); *see In re Chateaugay Corp.,* 10 F.3d 944, 958 (2d Cir. 1993) (a tort claim will not arise "where plaintiff is essentially seeking enforcement of the bargain.") In the instant case, Transamerica's claim that LifeMark breached its independent fiduciary duty is essentially indistinguishable from the contract provisions that Transamerica ineffectually claims that LifeMark breached and it therefore should be dismissed.

D. <u>The Fraud Allegations Specific To LifeMark Are Insufficient</u>

Transamerica's allegations of fraud specific to LifeMark are based on LifeMark's failure to disclose unrequired and unrequested information in connection with the issuance of the Annuity Contracts. For the first time in its objection to Defendants' Motions to Dismiss, Transamerica offers three purported reasons why this duty to disclose has been violated: (1) Transamerica's reasonable expectations of

9

LifeMark as set forth in the Agreement, (2) LifeMark had reason to know that the withheld information was material to the transaction and thus no inquiry was necessary, and (3) the Double Enhanced Benefit in the Annuity Contracts created a duty to disclose the "imminent death" of the annuitant. (*See* Plaintiff's Objection to Defendants Motions to Dismiss in CA-09-471 at p. 32).

As stated in Argument Sections A and B *supra*, and in Defendants' Consolidated Reply Memorandum at p. 20-38, these allegations are insufficient because LifeMark complied with all of the reasonable expectations in the Agreement for selling annuity contracts and had no reason whatsoever to know Transamerica was treating these transactions as if they were life insurance policies. Thus, LifeMark had no reason to know they were they were under any duty to disclose any information about the annuitant's health, life expectancy or relationship to the owners of the Annuity Contracts.

Finally, LifeMark adopts and incorporates by reference arguments made by all Defendants in support of their respective Motions to Dismiss.

### III. Conclusion

For all of the above stated reasons, LifeMark requests that this Court grant its Motion and dismiss all counts against it in Plaintiff's complaints, respectively.

LIFEMARK SECURITIES CORPORATION

By its Attorneys,

/s/ Joseph V. Cavanagh, Jr.
Joseph V. Cavanagh, Jr. (#1139)
Mary Cavanagh Dunn (#6712)
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
(401) 751-7542 (fax)
jvc@blishcavlaw.com
mcd@blishcavlaw.com

Dated: February 22, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court DM/ECF System.

/s/ Joseph V. Cavanagh, Jr.